EXHIBIT N

United States Government Accountability Office

# GAO

## Report to Congressional Committees

October 2011

# CONSUMER PRODUCT SAFETY COMMISSION

# Action Needed to Strengthen Identification of Potentially Unsafe Products



U.S. Government Accountability Office

GAO 90 YEARS  1921-2011
ACCOUNTABILITY ★ INTEGRITY ★ RELIABILITY

GAO-12-30



**GAO**
Accountability • Integrity • Reliability

# Highlights

Highlights of GAO-12-30, a report to congressional committees

October 2011

## CONSUMER PRODUCT SAFETY COMMISSION

### Action Needed to Strengthen Identification of Potentially Unsafe Products

## Why GAO Did This Study

In the wake of increased product recalls in 2007-2008, Congress passed the Consumer Product Safety Improvement Act of 2008 (CPSIA). Among other things, CPSIA requires the Consumer Product Safety Commission (CPSC) to establish a database on the safety of consumer products that is publicly available, searchable, and accessible through the CPSC Web site. In response, CPSC launched SaferProducts.gov in March 2011. The Department of Defense and Full Year Continuing Appropriations Act of 2011 requires GAO to report on the data collected by CPSC in its safety information database. This report examines (1) the information required for submitting a report of harm to SaferProducts.gov, (2) the information used to identify the product and to allow CPSC to review manufacturer claims of material inaccuracy in a report of harm, and (3) the length of time CPSC takes to review a manufacturer's claim that a report contains materially inaccurate information. To do this work, GAO analyzed agency data, regulations, and CPSC program documentation and interviewed CPSC staff and various industry and consumer representatives.

## What GAO Recommends

To effectively implement the recent amendments to CPSIA, GAO recommends that CPSC strengthen the analytic methods used to identify product information in a report of harm. CPSC agreed with GAO's recommendation. The minority commissioners also raised a number of concerns about the accuracy and usefulness of the new database.

View GAO-12-30 or key components. For more information, contact Alicia Puente Cackley at (202) 512-8678 or cackleya@gao.gov.

## What GAO Found

To be eligible for publication on SaferProducts.gov, reports of harm involving a consumer product must contain several types of information, such as descriptions of the product and the associated harm. Reports may be submitted by consumers, government agencies, and health care professionals, among others. GAO's analysis of CPSC data as of July 7, 2011, showed that 38 percent of the 5,464 reports submitted to CPSC contained information that CPSIA requires for publication. Of these reports, 1,847 were published on SaferProducts.gov. Although not required, many submitters appear to have firsthand knowledge of the product—37 percent of published reports stated that the submitter was also the victim, and 24 percent stated that the victim was the child, spouse, parent, or other relative of the submitter. Also, most submitters provided their optional consent for CPSC to release their contact information to the manufacturer.

Numeric information, such as a model number or serial number, can be helpful in identifying potentially unsafe products. However, this information is optional rather than required in a report of harm. Instead, submitters must only include a word or phrase sufficient to distinguish the product as one within CPSC's jurisdiction. All manufacturers we spoke with considered the required information insufficient for identifying products in a report of harm. On August 12, 2011, a new law was signed containing a requirement for CPSC to attempt to obtain the model number or serial number, or a photograph of the product, from submitters who did not provide this information in a report of harm. To meet this requirement, CPSC must identify all reports of harm that do not contain either a model number or a serial number. However, CPSC does not currently analyze its data to identify reports of harm that contain this numeric information. Instead, its method of analysis combines numeric identifiers—model numbers or serial numbers—and less precise text entries, such as product descriptions or names. Furthermore, some submitters include model numbers and serial numbers in other database fields that CPSC does not include in its analysis. Unless CPSC strengthens its analytic methods to identify model numbers or serial numbers in a report of harm, it will likely not be able to identify all reports that require the agency to contact the submitter for more product information because it does not track all reports of harm missing such information.

Prior to recent amendments to CPSIA, CPSC had 10 business days from its transmission of a report to the manufacturer in which to publish a report of harm (after the amendments, CPSC has up to 5 additional business days to publish a report when a claim of materially inaccurate information is made or when a report does not contain a model number or serial number). Most reports to which manufacturers responded that were published met the 10-day time frame. Of the 1,085 published reports of harm to which companies responded, 1,020 (94 percent) were published within 10 business days after CPSC notified the company that the report had been submitted. CPSC published 160 reports with claims of materially inaccurate information, and, of these reports, most were resolved and published within 10 business days. CPSC plans to conduct outreach to increase the number of manufacturers registered to receive electronic notifications to yield a more rapid response to its notifications.

_____ **United States Government Accountability Office**

# Contents

| Letter | | 1 |
|---|---|---|
| | Background | 4 |
| | For Reports That Meet Publication Requirements, Many Submitters Have Firsthand Knowledge and Provide Optional Contact Information | 7 |
| | CPSC Has Generally Been Able to Identify Products and Resolve Inaccuracy Claims but Could More Fully Identify Numeric Product Information Provided | 12 |
| | Most Reports with MII Claims Were Published within the Mandated Time Frame | 17 |
| | Conclusions | 21 |
| | Recommendation for Agency Action | 21 |
| | Agency Comments and Our Evaluation | 21 |
| Appendix I | Objectives, Scope, and Methodology | 24 |
| Appendix II | Comments from the Majority Commissioners of the Consumer Product Safety Commission | 28 |
| Appendix III | Comments from the Minority Commissioners of the Consumer Product Safety Commission | 30 |
| Appendix IV | GAO Contact and Staff Acknowledgments | 33 |
| Tables | | |
| | Table 1: Published Reports of Harm by Type of Submitter, as of July 7, 2011 | 8 |
| | Table 2: Submitters of Published Reports Who Provided or Did Not Provide Consent to Release of Their Contact Information to the Manufacturer, as of July 7, 2011 | 10 |
| | Table 3: CPSC's Resolution of MII Claims to Reports of Harm Published within 10-Day CPSIA Time Frame, as of July 7, 2011 | 20 |

Figures

Figure 1: CPSC's Electronic Process for Publishing a Report of
          Harm Submitted Through SaferProducts.gov          6
Figure 2: CPSC's Review Process for Publishing Reports of Harm,
          as of July 7, 2011          18

**Abbreviations**

| | |
|---|---|
| CPSA | Consumer Product Safety Act |
| CPSC | Consumer Product Safety Commission |
| CPSIA | Consumer Product Safety Improvement Act of 2008 |
| MII | materially inaccurate information |
| NHTSA | National Highway Transportation Safety Administration |

This is a work of the U.S. government and is not subject to copyright protection in the
United States. The published product may be reproduced and distributed in its entirety
without further permission from GAO. However, because this work may contain
copyrighted images or other material, permission from the copyright holder may be
necessary if you wish to reproduce this material separately.



**G A O**
Accountability * Integrity * Reliability

**United States Government Accountability Office**
**Washington, DC 20548**

October 12, 2011

The Honorable Richard Durbin
Chairman
The Honorable Jerry Moran
Ranking Member
Subcommittee on Financial Services
    and General Government
Committee on Appropriations
United States Senate

The Honorable Jo Ann Emerson
Chairwoman
The Honorable José E. Serrano
Ranking Member
Subcommittee on Financial Services
    and General Government
Committee on Appropriations
House of Representatives

A large number of consumer product recalls in 2007-2008 has led to
heightened scrutiny of consumer product safety regulation, and Congress
has considered the accessibility to the public of consumer complaints
submitted to the Consumer Product Safety Commission (CPSC). On
August 14, 2008, Congress passed the Consumer Product Safety
Improvement Act of 2008 (CPSIA) to strengthen CPSC's authority to
enforce safety standards and provide greater public access to product
safety information.[1] Among other things, CPSIA requires CPSC to
establish a database of consumer products and other products and
substances regulated by the Commission that are reported to be unsafe.
The act requires that the database be publicly available, searchable, and
accessible through the CPSC Web site.

The CPSIA-mandated database—SaferProducts.gov—was launched on
March 11, 2011. Through this Web portal, consumers and others meeting
the statutory requirements may submit reports of harm or the risk of harm

---

[1]Pub. L. No. 110-314, 122 Stat. 3016 (2008) (codified in scattered sections of title 15 of
the U.S. Code).

GAO-12-30  Consumer Product Safety Commission

from products and can search for information on products reported to be unsafe that they own or may be considering for purchase.[2] The CPSC database also publishes manufacturers' comments alongside reports of harm if requested by the manufacturer. As CPSC was developing SaferProducts.gov, some industry representatives raised concerns regarding who would be eligible to submit reports of harm and whether the submitter would be required to have first-hand knowledge of the incident. Industry representatives also questioned whether the information submitted to the database would be sufficient to identify the product or determine the accuracy of the report of harm, although CPSC disclaims any responsibility, as required by statute, to determine the accuracy of a submitted report.

In the Department of Defense and Full Year Continuing Appropriations Act, 2011, Congress required that we report on data in CPSC's safety information database.[3] In this report, we examine (1) the information required for submitting a report of harm to SaferProducts.gov, (2) the extent to which the information required for submitting a report of harm is sufficient to identify the product and to allow CPSC to review a manufacturer's claim that a report of harm contains materially inaccurate information (MII), and (3) the length of time CPSC takes to review and resolve manufacturers' claims of material inaccuracy in a report of harm.[4]

To address these objectives, we reviewed statutory and regulatory authority for the database and other program documentation, and we met with cognizant CPSC officials to document CPSC requirements for submitting a report of harm. Additionally, we obtained and analyzed electronic data from CPSC's safety information database to identify (a) what type of individuals and entities are submitting reports of harm, (b)

---

[2]See 15 U.S.C. § 2055a.

[3]Pub. L. No. 112-10, § 1574, 125 Stat. 38 (2011).

[4]In addition to these objectives, CPSIA requires that we analyze the utility of the safety information database, including an assessment of the use of the database by consumers, efforts by CPSC to inform the public of the database, and recommendations for measures to increase the use of the database by consumers and a broad range of the public. This additional study is to be submitted to congressional committees within 2 years of the establishment of the database by CPSC. Additional issues that this study may examine include an assessment of the types of companies that have registered to receive and respond to reports of harm and the extent to which CPSC is publishing only those reports that contain information required by CPSIA.

what information is captured in the database, (c) the type of product identification information included in reports, (d) reports that include claims of material inaccuracy and the outcomes for these claims, (e) the length of time manufacturers take to respond to a report of harm, and (f) the length of time CPSC takes to resolve a claim of material inaccuracy.[5] We assessed the reliability of these data by (1) performing electronic testing, (2) reviewing existing information about the data and the system that produced them, and (3) interviewing agency officials knowledgeable about the data and related management controls. Based on this assessment, we determined the data to be sufficiently reliable for the purposes of this report. In addition, we interviewed officials from national consumer, industry, and legal organizations that provide counsel to businesses regarding the CPSC database, as well as manufacturers that have submitted claims of material inaccuracy. Finally, we reviewed information on the content required for submitting complaints to other consumer-driven databases such as SaferCar.gov, which is administered by the National Highway Transportation Safety Administration (NHTSA). See appendix I for additional information on our scope and methodology.

We conducted this performance audit from April 2011 to October 2011 in San Francisco, California; Atlanta, Georgia; and Washington, D.C., in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that

---

[5]Congress recently passed amendments to CPSIA that altered some of CPSC's data collection processes. Our analysis was conducted using electronic data prior to the enactment of these amendments. Specifically, Congress passed the amendments, which were signed on August 12, 2011, to provide CPSC with greater authority and discretion in enforcing the consumer product safety laws, and for other purposes. Pub. L. No. 112-28, 125 Stat. 273 (2011). Section 7 of the law amended section 6A(c) of the Consumer Product Safety Act by requiring that CPSC follow up with submitters of reports of harm that do not contain the product's model or serial number. The law also extended the 10-day publication timeline to 15 business days when a claim of materially inaccurate information is made or when the report does not contain a model or serial number. When such numeric information is missing from a report, CPSC is to follow up with submitters to attempt to obtain the model or serial number of the product, or a photograph of the product if the model or serial number is not available. If CPSC receives this information, CPSC must then transmit this information to the manufacturer or private labeler identified in the report of harm. CPSC has 15 business days from the date on which it notifies the manufacturer of the initial report of harm to publish the report on SaferProducts.gov, whether or not additional product identification information is successfully obtained from the submitter.

the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

## Background

CPSC was created in 1972 under the Consumer Product Safety Act to regulate certain consumer products and address those that pose an unreasonable risk of injury, assist consumers in evaluating the comparative safety of consumer products, and promote research and investigation into the causes and prevention of product-related deaths, injuries, and illnesses.[6] CPSC's jurisdiction is broad, covering thousands of types of manufacturers and consumer products used in and around the home and in sports, recreation, and schools. CPSC does not have jurisdiction over some categories of products, including automobiles and other on-road vehicles, tires, boats, alcohol, tobacco, firearms, food, drugs, cosmetics, medical devices, and pesticides. Other federal agencies—including NHTSA, Coast Guard, Department of Justice, Department of Agriculture, Food and Drug Administration, and Environmental Protection Agency—have jurisdiction over these products.

As noted above, CPSC was required to create a publicly accessible, searchable database of consumer product incident reports pursuant to section 6A of the Consumer Product Safety Act, as amended by Section 212 of CPSIA. CPSIA set an 18-month deadline for the release of the database. CPSC submitted the database implementation plan to Congress in September 2009. CPSC published a final rule on the database in the Federal Register on December 9, 2010.[7] Prior to the public release of SaferProducts.gov on March 11, 2011, CPSC held a series of workshops for agency staff and held public outreach events, including Web conferences designed for businesses and consumers on the implementation of the online searchable consumer product safety incident database. In addition, before launching SaferProducts.gov, CPSC conducted an initial 6-week trial release available to interested users for testing and feedback.

Through SaferProducts.gov, an individual or entity can submit a report describing harm or risk of harm related to the use of consumer products

---

[6]Pub. L. No. 92-573, 86 Stat. 1207 (1972) (codified, as amended, at 15 U.S.C. §§ 2051-2089).

[7]75 Fed. Reg. 76,832 (codified at 16 C.F.R. pt. 1102).

for review by other users.[8] As required by CPSIA, the submitter of a report of harm must fit into one of the following five categories:

1. consumers;

2. local, state, or federal government agencies;

3. health care professionals;

4. child service providers; and

5. public safety entities.[9]

Once CPSC receives a report of harm through SaferProducts.gov, it reviews each report to determine if the submitter has included all the information required by CPSIA for publication in the public database, which is discussed in greater detail later. Reports that do not meet the minimum criteria for publication in the database are reviewed by CPSC staff and saved for internal use, and CPSC is not required to contact the submitters for further information.[10] After reviewing the report of harm,

---

[8] 15 U.S.C. § 2055a(b)(1)(A).  CPSIA and CPSC define "harm" as injury, illness, or death or risk of injury, illness or death. 15 U.S.C. § 2055a(g); 16 C.F.R. § 1102.6(b)(4).

[9] 15 U.S.C. § 2055a(b)(1)(A). 16 C.F.R. § 1102.10(a) specifies that the category "consumers" includes, but is not limited to, users of consumer products, family members, relatives, parents, guardians, friends, attorneys, investigators, professional engineers, agents of a user of a consumer product, and observers of the consumer products being used. Local, state, or federal government agencies include, but are not limited to, local government agencies, school systems, social services, child protective services, state attorneys general, state agencies, and all executive and independent federal agencies as defined in Title 5 of the United States Code. Health care professionals include, but are not limited to, medical examiners, coroners, physicians, nurses, physicians' assistants, hospitals, chiropractors, and acupuncturists. Child service providers include, but are not limited to, child care centers, child care providers, and prekindergarten schools. Public safety entities include, but are not limited to, police, fire, ambulance, emergency medical services, federal, state, and local law enforcement entities, and other public safety officials and professionals, including consumer advocates or individuals who work for nongovernmental organizations, consumer advocacy organizations, and trade associations, so long as they have a public safety purpose.

[10] According to CPSC officials, it will mail a letter to submitters who did not include all of the information required under CPSIA if the submitters provided contact information and asked that the report be published on SaferProducts.gov. This letter describes the information missing from the report of harm, and officials explained that some submitters contact CPSC to add the missing information to the report.

CPSC then transmits a copy to manufacturers, importers, and private labelers identified in reports, and these companies have the opportunity to comment on them. CPSC transmits reports of harm electronically to manufacturers and private labelers registered on SaferProducts.gov, and others receive reports via postal mail. Qualifying reports and manufacturer comments are published online at www.SaferProducts.gov for anyone to search (see fig. 1). SaferProducts.gov allows the public to review incident reports that were previously available to only CPSC unless requested under the Freedom of Information Act, and view manufacturers' comments to reports of harm when manufacturers request the publication of their comments.

**Figure 1: CPSC's Electronic Process for Publishing a Report of Harm Submitted Through SaferProducts.gov**



Source: GAO analysis of CPSC regulation and CPSIA, as amended; Art Explosion (images).

Note: SaferProducts.gov is a part of CPSC's larger Consumer Product Safety Risk Management System (CPSRMS). CPSC officials described CPSRMS as a centralized, integrated data environment that upgrades legacy data systems that support many efforts at the agency including its case management and investigative processes among others. It is intended to replace CPSC's historically segmented data systems with a unified information technology system. The updated system is intended to allow CPSC to study data from multiple sources in a centralized location to identify emerging consumer product safety hazards.

GAO-12-30  Consumer Product Safety Commission

## For Reports That Meet Publication Requirements, Many Submitters Have Firsthand Knowledge and Provide Optional Contact Information

Once CPSC receives a report of harm, it determines whether the report is eligible for publication on SaferProducts.gov. The report of harm is eligible if the product described in the report is a consumer product under the jurisdiction of CPSC and passes the "CPSIA check"—a term used by CPSC to identify the process whereby staff review a report for required submission criteria.[11] CPSIA requires, at a minimum, that the submitter include the following eight pieces of information when submitting a report of harm: (1) description of the consumer product sufficient to distinguish the product as a product or component part regulated by CPSC; (2) identity of the manufacturer or private labeler on name; (3) description of the harm related to use of the consumer product; (4) approximate or actual date of the incident; (5) category of submitter; (6) submitter's contact information; (7) submitter's verification that the information contained therein is true and accurate; and (8) consent to publication of the report of harm.[12]

## CPSC Determined That about One-Third of Reports of Harm Submitted Contained Required Information

Many reports of harm submitted to CPSC as of July 7, 2011, were missing information required for publication on the Web site. Our analysis of CPSC data showed that as of July 7, 2011, 5,464 reports of harm were received by CPSC from eligible submitters.[13] Of these reports of harm, 2,084 (38 percent) passed the CPSIA check, and 1,847 (34 percent) were published on SaferProducts.gov.[14] Consumers submitted almost all of the reports—97 percent (1,786)—published on SaferProducts.gov (see table 1). The remaining reports were submitted by the other individuals and entities eligible to make submissions to the database.

---

[11]See 15 U.S.C. § 2055a. Under 15 U.S.C. § 2055a(c)(1) and 16 C.F.R. § 1102.20(c), CPSC must transmit an eligible report of harm, to the extent practicable, to the manufacturer or private labeler within 5 business days of submission of the report of harm.

[12]15 U.S.C. § 2055a(b)(2)(B); C.F.R. § 1102.10(d). Subject to §§ 1102.24 and 1102.26, CPSC will publish in the Publicly Available Consumer Product Safety Information Database reports of harm containing all of the minimum information required.

[13]CPSC also collects reports of harm from news services, which do not meet CPSIA criteria for publication on SaferProducts.gov.

[14]According to CPSC officials, although eligible for publication, some reports of harm may not have been published because they were still in pending publication status or because CPSC had accepted a claim that the report included materially inaccurate information.

**Table 1: Published Reports of Harm by Type of Submitter, as of July 7, 2011**

| Submitter of report of harm | Number of published reports of harm |
|---|---:|
| Consumer | 1,786 |
| Federal, state, and local government agency | 21 |
| Public safety entity | 20 |
| Health care professional | 16 |
| Child service provider | 4 |
| Total | 1,847 |

Source: GAO analysis of CPSC data.

According to CPSC officials, during CPSC's initial CPSIA check, reports of harm are sometimes deemed ineligible for publication on SaferProducts.gov because the identified product is outside CPSC's jurisdiction. Officials explained that once CPSC determines that the product is not within its jurisdiction, the report of harm is forwarded to the appropriate federal agency. CPSC officials also explained that they are not required to determine the accuracy of submitted reports of harm and noted that the SaferProducts.gov Web site includes the following disclaimer mandated by CPSIA:

CPSC does not guarantee the accuracy, completeness, or adequacy of the contents of the Publicly Available Consumer Product Safety Information Database on SaferProducts.gov, particularly with respect to information submitted by people outside of CPSC.[15]

However, as stated above, CPSC does review each submitted report for certain information required by Section 212 of CPSIA prior to publication. When required information is missing from a report of harm and CPSC deems the report ineligible for publication, it is not required to, and generally does not, contact the submitter although the information is retained in CPSC's central database.[16] Submitters may also opt to provide information beyond that required by CPSIA in additional fields

---

[15]*See* 15 U.S.C. § 2055a(b)(5).

[16]As we described earlier, according to CPSC, when a report of harm is missing information, if the submitter has included contact information and requested that the report be published, CPSC will send the submitter a letter describing the missing items that make the report ineligible for publication.

GAO-12-30  Consumer Product Safety Commission

available within the SaferProducts.gov Web form. For example, the submitter can choose to provide their relationship to the victim, the model or serial number of the reported product, and their consent to the release of their contact information to the manufacturer or private labeler.[17]

During the comment period for the regulation that governs submissions to SaferProducts.gov and in interviews we conducted, industry representatives stated that reports of harm would be more useful if additional product identification information, such as model name or serial number, were required. According to industry representatives, not requiring this information may preclude manufacturers and private labelers from properly identifying the product, which would make it difficult for them to address the report of harm. However, according to CPSC, not all consumers have access to such information, and requiring it for publication may prevent submitters from filing reports of harm. Further, not all products have numeric identifiers. Numeric product information is discussed in greater detail later in this report.

## At Least One-Third of Submitters Appear to Have Firsthand Knowledge, Citing Harm to Themselves

While the statute does not require individuals or entities submitting reports of harm to have firsthand knowledge of the incident, and CPSC does not ask submitters if they have such knowledge, 61 percent (1,128) of submitters reported that the harm or risk of harm occurred to themselves or a family member. Our analysis of CPSC data showed that as of July 7, 2011, among published reports, 37 percent (680) of submitters reported that they themselves were the victims of the reported harm or risk of harm. Twenty-four percent (448) of submitters cited that the victim was their child, spouse, parent, or other relative.

Industry representatives asserted that eligible submitters should be limited to those who had personal experience with the product because these individuals are able to provide the most accurate description of the product associated with the injury or risk of injury. Further, two manufacturers with whom we spoke explained that their ability to investigate reports of harm is impacted by the quality of information about the product and reported incident, and that only someone with firsthand knowledge can provide adequate information.

---

[17] 15 U.S.C. § 2055a(b)(6); 16 C.F.R. § 1102.10.

While Congress required CPSC to include a disclaimer on SaferProducts.gov, according to CPSC officials, it also established three additional mechanisms to help control inaccuracies: (1) the option for companies to respond to reports of harm that identify them as the manufacturer or private labeler, (2) the ability of CPSC to remove material inaccuracies, and (3) the attestation by submitters that the information contained in the report of harm is accurate.[18] Further, officials noted that historically the agency has not required firsthand knowledge as a criterion for reporting to the agency because such a requirement may prevent individuals and entities with expertise in product safety, such as fire and medical personnel, from filing incident reports, thereby impacting CPSC's ability to obtain consumer product safety data.

## Most Submitters Provided Optional Consent for Manufacturer Contact

According to our analysis of CPSC data, as of July 7, 2011, 83 percent (1,527) of the 1,847 submitters whose reports were published on SaferProducts.gov included their optional consent to allow the manufacturer or private labeler to contact them to discuss the report. Of these reports, consumers were about five times more likely to include their consent rather than disallow manufacturer contact (see table 2).

**Table 2: Submitters of Published Reports Who Provided or Did Not Provide Consent to Release of Their Contact Information to the Manufacturer, as of July 7, 2011**

| Submitter of report of harm | Consent provided | No consent provided |
|---|---|---|
| Consumer | 1,484 | 302 |
| Federal, state, and local government agency | 18 | 3 |
| Public safety entity | 11 | 9 |
| Health care professional | 10 | 6 |
| Child service provider | 4 | 0 |
| **Total** | **1,527** | **320** |

Source: GAO analysis of CPSC data.

[18]Section 6A of the Consumer Product Safety Act (CPSA), as amended by the Section 212 of CPSIA, allows for manufacturer comment, prescribes the procedures for claims of materially inaccurate information, and requires that the public database publish a disclaimer.

Industry representatives have raised concerns that companies are unable to adequately investigate the reported incident without the submitter's contact information. Manufacturers with whom we spoke explained that they are able to respond to an incident report more promptly when they can contact the submitter in order to gather more information on the product itself. For example, one manufacturer explained that when it contacted the consumer, the manufacturer was able to determine where the product was purchased and access previous warranty claims and maintenance records—all of which allowed for a better understanding of the reported incident and more thorough investigation of how the reported product was involved.

While CPSC does not require that submitters provide consent to have the manufacturer contact them, guidance on the report filing page of SaferProducts.gov indicates that providing this optional consent may help the manufacturer or private labeler to address the safety concern the submitter has identified. According to CPSC officials, requiring submitters to consent to the release of their contact information to manufacturers could potentially limit the number of submissions of complaints and therefore impact CPSC's ability to identify emerging hazards. Further, CPSC's statutory manufacturer notification process gives companies the opportunity to provide public comments to a report of harm in which they are identified. According to CPSC officials, many manufacturer comments have included a toll-free number and asked that submitters contact the company directly in order to discuss the reported incident.

**CPSC Has Generally Been Able to Identify Products and Resolve Inaccuracy Claims but Could More Fully Identify Numeric Product Information Provided**

Specific, numeric identifying information for products, such as model number or serial number, is optional rather than required for those submitting a report of harm to SaferProducts.gov.[19] The SaferProducts.gov Web form used for submitting a report contains fields in which a submitter can provide numeric product information, but such information is not required in order for CPSC to publish the report. Instead, the only identification information required in a report is "a word or phrase sufficient to distinguish the product as a consumer product, a component part of a consumer product, or a product or substance regulated by the Commission."[20] In the 1,847 published reports we reviewed, submitters included descriptions of the product in various fields, including a field for numeric information and fields for a more general description of the incident or product. Submitters also included a variety of product information, such as the manufacturer and product name, physical descriptions of the product, and numeric identifiers, including model numbers and serial numbers. Some submitters chose to complete fields in the Web form with descriptions of the product involved but no specific numeric identifiers. Other submitters included model or serial numbers but entered this information in fields other than those designated for numeric information.

**Majority of Reports of Harm Contain Numeric Identifiers, but CPSC Could Analyze This Information More Thoroughly**

When we asked CPSC how many reports of harm contained model numbers and serial numbers, it analyzed its data and reported to us that model information or serial numbers appeared in 84 percent of reports of harm published on SaferProducts.gov as of June 2011. However, CPSC's inclusion of "model information" may consist of numeric values, including model number, as well as less specific text entries, such as product descriptions or names. For example, in one report the submitter listed only the phrase "cookie sheet, nonstick" in the model field, and in another report, the submitter listed "bar table." Our analysis of CPSC data showed that out of 1,847 reports of harm published on SaferProducts.gov as of July 7, 2011, 72 percent (1,339) contained specific numeric identifiers, such as a model number or serial number, somewhere in the report.

---

[19]Pub. L. No. 112-28 amended CPSIA by requiring that CPSC follow up with submitters of reports of harm that do not contain the product's model number or serial number to try to obtain this information (or a photograph of the product in the event such numeric information is unavailable). However, the model or serial number fields on initial reports by submitters remain optional.

[20]16 C.F.R. § 1102.10(d)(1).

According to CPSC, to conduct the analysis that resulted in its statement that 84 percent of reports of harm contained model information or serial numbers, it analyzed two fields in the database—model and serial number. CPSC counted any entry in the model or serial number field—whether numeric or text—which resulted in its statistic of 84 percent. However, we analyzed these fields, as well as additional fields in which submitters at times entered numeric identifiers, and determined that 72 percent of reports contained numeric identifiers somewhere in the report. Therefore, CPSC's statistic of 84 percent reflects how many submitters filled in the optional model or serial number fields, but it does not reflect how many reports actually contain numeric identifiers.

Some industry representatives we spoke with have claimed that numeric product information such as model numbers or serial numbers should be required in all reports of harm in order to enable the product involved in the reported incident to be accurately identified. When only a product name or general description is provided, these industry representatives note that it is not always possible for the manufacturer to determine which version of the product was involved in the incident of harm, especially when new versions of a given product may be released each year with no change to the name of the product. We spoke with five manufacturers that submitted MII claims, who all stated that numeric identifiers help their companies identify the exact product included in a report of harm, further investigate the submitter's claim, and respond to the report. However, according to CPSC, individuals submitting reports of harm may not have access to numeric identifiers, such as the model number or serial number. If CPSC were to require this information, it expects that it would receive fewer reports of harm.

CPSC does not currently analyze its data to identify the number of reports of harm that contain either model numbers or serial numbers. Instead its method of analysis combines numeric identifiers—model or serial numbers—and text entries. Furthermore, some submitters include model and serial numbers in other database fields that CPSC does not include in its analysis. As noted earlier, on August 12, 2011, a new law was signed containing a requirement for CPSC to attempt to obtain the model number or serial number from submitters who did not provide this information in a report of harm. To determine which reports to follow up on to fulfill this new requirement, CPSC must identify all reports of harm that are missing model numbers or serial numbers. However, because CPSC's current analysis does not track this information accurately, CPSC will likely not be able to identify all reports that require the agency to contact the submitter for more product information.

**Nearly All Claims of Inaccuracy Have Been Resolved, Although Two Industry Representatives Consider Aspects of the Process Burdensome for Manufacturers**

A manufacturer may make a claim of material inaccuracy when it believes the information in a report of harm is false or misleading and so substantial as to affect a reasonable consumer's decision making about a product.[21] The alleged false or misleading information may regard the identification of a consumer product, manufacturer or private labeler, harm or risk of harm related to the use of the product, or the date on which the incident occurred.[22] CPSC reviews MII claims for the following information: a unique identifier of the report of harm, the specific disputed sections of the report of harm, the basis for the allegation that the report of harm is inaccurate, evidence of the inaccuracy (such as documents or photographs), the type of relief requested (such as exclusion from the database or redaction of a section of the report), alternatives for correction other than removing the report from the database, and a statement that the person submitting the MII claim is authorized to do so by the manufacturer or private labeler.[23]

After CPSC reviews an MII claim, it will resolve the claim in one of three ways:

- CPSC can disagree completely with the claim and reject it;

- CPSC can agree completely with the claim and accept it; or

- CPSC can partially agree with the claim and correct only part of the report of harm or add information.

If CPSC accepts an MII claim in total or in part, it will remove, correct, or add information in a report of harm indicating that information was added by CPSC. According to our analysis of CPSC data, as of July 7, 2011, manufacturers or private labelers had made 223 MII claims on reports of harm submitted to SaferProducts.gov since the Web portal launch on March 11, 2011. Of the 223 MII claims submitted, CPSC accepted 149 claims (67 percent). Many of the accepted claims were simple cases where the wrong manufacturer of a product was identified in the report of

---

[21]16 C.F.R. § 1102.26(a)(2).

[22]16 C.F.R. § 1102.26(a)(2).

[23]16 C.F.R. § 1102.26(b).

**GAO-12-30  Consumer Product Safety Commission**

harm. Additionally, 18 of the MII claims (8 percent) were accepted in part, and 43 MII claims (19 percent) were rejected.[24]

Our review of MII claim data showed four common allegations made by manufacturers to assert that a report of harm was materially inaccurate.

1. *Report did not identify the correct manufacturer.* Among 149 accepted MII claims, 119 accepted claims (80 percent) involved an inaccurately identified manufacturer.

2. *Report did not describe a harm or risk of harm from a product.* Specifically, 14 accepted MII claims stated that the submitter had not asserted a risk or incident of harm. For example, one report described a garden tractor that would stop operating when in use. However, the submitter did not describe a risk or incident of harm.

3. *The report did not show that the product was the source of the problem.* Specifically, five accepted MII claims stated that the evidence in the report of harm did not show that the product was the source of the problem. For example, in one report of harm a service technician found that a loose gas pipe leading to a stove caused a gas leak rather than the stove itself, which was identified by the submitter as the source of the problem.

4. *The report involved a product that was outside of CPSC's jurisdiction.* Specifically, four accepted MII claims made this assertion. For example, an over-the-counter drug product was the subject of one report and the manufacturer claimed, and CPSC acknowledged, that this was not within CPSC's jurisdiction.[25]

---

[24]At the time we received CPSC's data, 13 additional MII claims had been submitted and were under review by the agency pending a resolution.

[25]When manufacturers assert that a report of harm should not be included in the database because it is out of CPSC's jurisdiction, these reports initially passed CPSC's review for CPSIA compliance, as described earlier. According to CPSC, it initially assesses each report to make sure it is within its jurisdiction, based on the information the submitter provides. CPSC stated that MII claims submitted after the agency's initial review can provide additional information that demonstrates that the report is out of CPSC's jurisdiction. In this case, CPSC will then redesignate the report of harm as noncompliant under CPSIA.

For 35 of the 43 rejected MII claims, CPSC determined that the manufacturer had failed to meet the burden of proof to demonstrate that the information in the report of harm was inaccurate. However, manufacturers can submit additional MII claims with more information to meet the burden of proof. The reasons for the rejections for the remaining eight claims included duplicate claims and a determination by CPSC that an importer that sought to have its name removed from reports of harm was indeed a valid responsible party.

According to two industry representatives, completing the documentation required for the submission of an MII claim is difficult for manufacturers because CPSC requires a high burden of proof by specifying that the false or misleading information must be so substantial as to affect a reasonable consumer's decision making. According to these observers, an MII claim submission often requires legal assistance, which small or mid-sized companies may not have the means to access. However, according to two manufacturers that have submitted MII claims, the process is not difficult if the disputed information is limited and clear, and it is easier than submitting additional paper submissions under the process used before the creation of the online database. For example, when one of these manufacturers submitted claims that the consumer product in the report of harm was not made by the company, the manufacturer did not find it difficult to provide CPSC with the required information. One manufacturer suggested that for more complex MII claims, it may take more time and effort to gather evidence to support the claim. For example, a claim that the company's product was not the cause of the incident of harm may require more research and documentation than other claims. In such a case, a manufacturer may, for example, try to obtain the product from the consumer and have a laboratory test the product to determine whether it could have been the cause of the incident. Gathering evidence to prove that a company's product was not the cause of the harm could be time-consuming and costly, according to this manufacturer.

## Most Reports with MII Claims Were Published within the Mandated Time Frame

Our analysis of CPSC data, as of July 7, 2011, showed that manufacturers and private labelers responded to 1,335 reports of harm with a general comment, claim of confidential information, or claim of materially inaccurate information. CPSC published 1,085 of these reports of harm with responses on SaferProducts.gov, and 94 percent of these (1,020) were published within 10 business days of CPSC's having notified the company that a report of harm had been submitted.[26] During the period of our analysis, CPSC was statutorily required to send reports of harm that met the criteria set forth in CPSIA to the manufacturer or private labeler identified in the report and publish it on SaferProducts.gov within 10 business days (see fig. 2) from that notification date.[27] Once CPSC sends the report to the manufacturer or private labeler, the company can provide comments or dispute information in the report. The company may respond to the report of harm in three ways: (1) with a general comment, (2) with a claim that the report reveals confidential business information, or (3) with a claim that the information is materially inaccurate (referred to as an MII claim), as previously discussed.[28]

---

[26]Our analysis showed that CPSC did not publish 250 of the 1,335 reports of harm to which companies responded. According to CPSC officials, some of these reports may have been pending publication status or associated with MII claims that CPSC accepted and determined not to publish.

[27]This analysis was conducted using data collected prior to August 12, 2011, when a new law was signed amending CPSIA. As discussed above, Pub. L. 112-28 amends CPSIA to allow for a 15-day publication time frame from when CPSC notified the manufacturer of the report of harm in certain situations (when a claim of materially inaccurate information is made or when the report does not contain a model number or serial number) during which CPSC must transmit a report of harm to the manufacturer or private labeler, review the company's response, and determine whether or not to publish the report on SaferProducts.gov.

[28]Manufacturers and private labelers may submit multiple responses to a report of harm. For example, a manufacturer may submit general comments and MII claims to CPSC in response to the same report of harm.

**Figure 2: CPSC's Review Process for Publishing Reports of Harm, as of July 7, 2011**



Source: GAO analysis of CPSC regulation and CPSIA, as amended; Art Explosion (images).

[a]Under Public Law No. 112-28, CPSC now has 15 business days from the date it notified the manufacturer of the report of harm to publish it on SaferProducts.gov in certain situations (such as when a claim of materially inaccurate information is made, or when the report does not contain a model number or serial number).

[b]CPSC provides expedited resolution of MII claims to registered manufacturers or private labelers when the claim is less than 5 pages long. CPSC also accepts general comments, claims of confidential business information, and MII claims from companies after the 10-day time frame has expired and the report has been published on SaferProducts.gov. If CPSC staff receive an MII claim or make a determination on an MII claim after CPSC has published the report of harm, the claim must be resolved within 7 business days of the submission of the claim, at which time CPSC may remove the report of harm entirely from SaferProducts.gov or redact portions of the report.

During the period of our analysis, CPSC had until the tenth business day from the date it notified the company of the report of harm to receive and review the manufacturer's response and determine whether to publish the report.[29] According to CPSC officials, as of June 2011 about 2,500 manufacturers were registered to receive reports of harm. As of July 7, 2011, our analysis of CPSC data showed that of the 1,085 reports of harm with manufacturer responses that CPSC had published, 923 were reports of harm with general comments, 160 were MII claims, and 2 were claims of confidential business information. If the manufacturer or private labeler requested publication of the general comment, CPSC included the

---

[29]Under 15 U.S.C. §2055a(c)(3)(A), prior to the passage of Pub. L. 112-28 discussed above, CPSC was required to publish all eligible reports of harm–whether or not they included manufacturer comment–on SaferProducts.gov not later than the tenth business day after it transmitted the report to the manufacturer or private labeler.

comment with the report of harm when published on SaferProducts.gov. Claims of confidential business information and MII, however, are not published with the report of harm.

To address concerns about the time allowed to respond to claims of harm, Congress passed amendments to CPSIA to allow for a 15 business day publication time frame from the time CPSC transmits a report of harm to the manufacturer or private labeler in certain situations (when an MII claim is made or the report does not contain a model number or serial number), during which CPSC reviews any response the company submits and determines whether or not to publish the report on SaferProducts.gov. Industry representatives and manufacturers with whom we spoke had raised concerns about the length of time companies have to respond to a report of harm before it is published. Many suggested that the 10 business day time frame from manufacturer notification of the report of harm to publication of the report on SaferProducts.gov, during the period of our analysis, was too short, particularly for reports of harm that may contain materially inaccurate information. They explained that 10 business days is insufficient to adequately investigate how the consumer product identified in the report of harm may have been involved in the harm or risk of harm described by the submitter. Some manufacturers and industry representatives noted that a company's reputation may be damaged when a report of harm is published on SaferProducts.gov prior to CPSC's resolution of an MII claim from the company identified in the report.

Although industry representatives expressed concerns about not being able to respond to a report of harm with an MII claim before CPSC publishes the report on SaferProducts.gov, our analysis showed that CPSC resolved and published most reports of harm to which companies submitted MII claims within the 10 business day time frame. For example, as of July 7, 2011, of the 223 MII claims CPSC received, it published 160 associated reports of harm. Of these, CPSC published 145 reports with MII claims on SaferProducts.gov within 10 business days after notifying the company of the initial report. CPSC resolved 133 (92 percent) of the 145 MII claims 10 business days or less after manufacturer notification. Of these, CPSC accepted 91 MII claims, partially accepted 13, and rejected 29 MII claims within the 10-day time frame (see table 3).

Table 3: CPSC's Resolution of MII Claims to Reports of Harm Published within 10-Day CPSIA Time Frame, as of July 7, 2011

| CPSC resolution of MII claim | Resolved 10 days or less after notification | Resolved 11-15 days after notification | Resolved 16 days or more after notification | Total |
|---|---|---|---|---|
| Accepted | 91 | 3 | 0 | 94 |
| Accepted in part | 13 | 2 | 1 | 16 |
| Rejected | 29 | 5 | 1 | 35 |
| Total | 133 | 10 | 2 | 145 |

Source: GAO analysis of CPSC data.

The statutory change allowing CPSC 15 business days from the date that it notifies a company of a report of harm to publish it gives companies more time than previously allotted to respond to reports and gives CPSC additional time to resolve the company's response before publication in certain situations (such as when a claim of materially inaccurate information is made, or when the report does not contain a model number or serial number).[30] Had the 15 business day statutory time frame been in place, CPSC would have resolved all but two reports with MII claims within this mandated publication time frame. As noted in table 3, CPSC did not resolve 12 of the 145 reports of harm with MII claims before posting them on SaferProducts.gov within the 10 business day time frame. Specifically, 10 of these reports were resolved within 11 to15 business days from the date on which the company was notified, and 2 reports were resolved 16 days or longer from notification (see table 3).

Additionally, according to our discussions with CPSC staff, it can resolve a company's MII claim more quickly using an electronic notification method to transmit the report of harm to the manufacturers or private labelers registered with SaferProducts.gov than using postal notification for those companies not registered. As previously noted, companies that have registered on the business portal of SaferProducts.gov receive the report of harm from CPSC via electronic transmittal. Our analysis of CPSC data as of July 7, 2011, showed that CPSC electronically transmitted 87 percent of reports of harm to manufacturers and private labelers.[31] According to CPSC officials, the agency plans to conduct

---

[30]Pub. L. No. 112-28, § 7.

[31]CPSC transmitted 7 percent of reports of harm via postal mail because the manufacturers and private labelers were not registered on SaferProducts.gov and 5 percent of CPSC transmittals did not specify the method of notification.  Due to rounding, percentages do not add to 100.

outreach to businesses to increase the number of manufacturers and private labelers registered to receive electronic notifications.

## Conclusions

Data collected through SaferProducts.gov could enhance CPSC's broader efforts to identify consumer product safety risks and unsafe consumer products in the marketplace. Therefore, the ability to accurately identify a product in a report of harm is an important aspect of the usefulness of the database to CPSC and to other users, such as consumers and manufacturers. During the development of SaferProducts.gov and the rulemaking process for the regulation that governs the safety information database, industry representatives questioned whether numeric product identification information collected in reports of harm by CPSC should be required rather than optional. CPSC reported that a high percentage of reports of harm published as of June 2011 contained model information or serial numbers. However, we found that CPSC's analysis grouped reports containing specific numeric identifiers with reports containing only text descriptions, from which it could be difficult to identify the product, while at the same time potentially overlooking numeric product information in other fields. While the model and/or serial numbers remain optional information for the submitter to include, under the recent amendments to CPSIA, CPSC now must contact submitters who did not report a model number or serial number to attempt to obtain this information, or a photograph of the product, before sending the report of harm to the manufacturer for comment. Unless CPSC strengthens the analytic methods used to identify reports with missing model numbers or serial numbers, it will not be able to identify all reports that require the agency to contact the submitter for more product information because it currently does not track all reports of harm missing such information.

## Recommendation for Agency Action

To effectively implement the recent amendments to CPSIA, we recommend that CPSC enhance the analytic methods it uses to identify product information in a report of harm, such as by verifying whether the model field in its data contains a number (versus a text response, which would not meet the statutory requirement) or by searching for model numbers or serial numbers that may be listed in other fields.

## Agency Comments and Our Evaluation

We provided a draft of this report to CPSC for review and comment. The commissioners provided written comments in two separate response letters—one from a majority of commissioners, and one from a minority of commissioners—that are presented in appendices II and III. In both

response letters, CPSC's five commissioners agreed with our recommendation and noted that we undertook a rigorous assessment of the data collected via SaferProducts.gov. In the majority letter, three commissioners described actions underway to help CPSC meet our recommendation and the requirement in the August 2011 amendment to CPSIA that it contact submitters that have not included a model number or serial number in the report of harm to attempt to obtain that information or a photograph of the product. The minority commissioners do not believe that the Commission's actions to date have adequately addressed GAO's concerns. We have not verified CPSC's actions and plan to follow up on our recommendation during our mandated review of CPSC's database.

In a separate letter, the two minority commissioners raised additional concerns about the information contained in the CPSC database and suggested further analyses. In the first instance, the minority commissioners wanted to better understand why only slightly more than a third of all incidents were reported with firsthand knowledge of the incident. We report this fact, but also acknowledge that an additional 24 percent of submitters stated that the victim was the child, spouse, parent, or other relative of the submitter. We analyzed the data to determine who submitted the 5,464 reports from March 11, 2011, through July 7, 2011. During our review, we met with various consumer groups and others that use the database. In designing our next mandated study, we will consider the feasibility of contacting individual submitters about reported incidents.

The minority commissioners also wanted to clarify the statistic that 97 percent of the reports of harm published on SaferProducts.gov were submitted by consumers. Submitters designate themselves as consumers or another type of submitter when they complete a report of harm. In our report, we noted how the CPSC had defined the submitter category of "consumer" in the regulation. However, in our analysis, we do not use the designation of "consumer" to determine whether or not someone has firsthand knowledge of the reported incident. We found that at least one-third of submitters reported that they were the victims of the incident in the report of harm. As noted above, 24 percent said that the victim was their child, spouse, parent, or other relative.

The minority commissioners also raised issues concerning the resources required of CPSC to recover additional information to resolve questions of public safety and material inaccuracy. The letter suggested that GAO could provide valuable insights regarding contact information in reports of harm and the number of manufacturers that lack enough information to make a claim of material inaccuracy. We determined that 83 percent of published

reports contained the submitter's consent to allow CPSC to provide contact information to manufacturers. As noted in the report, under the amendments to CPSIA, CPSC must now contact consumers when certain information is absent from the report to attempt to obtain additional information that should help manufacturers and CPSC better identify unsafe products. In addition, CPSC told us that it plans to conduct outreach to manufacturers to encourage them to register to use the new database.

Finally, the minority commissioners question the usability of the new consumer database. They also asked whether GAO believes the current system can handle the growing number of incidents and the new information technology components planned to be added in the near future. As previously mentioned, CPSIA requires that we conduct an additional study to analyze the utility of the safety information database, including assessing the use of the database by consumers and efforts by CPSC to inform the public of the database, and making recommendations for measures to increase the use of the database by consumers and a broad range of the public. We will consider these concerns in designing this forthcoming study, which is to be submitted to congressional committees within 2 years of the establishment of the database by CPSC.

We are sending copies of this report to interested congressional committees and the Chairman and commissioners of CPSC. In addition, the report will be available at no charge on GAO's Web site at http://www.gao.gov.

If you or your staff members have any questions about this report, please contact me at (202) 512-8678 or cackleya@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report. GAO staff who made major contributions to this report are listed in appendix III.

Alicia Puente Cackley, Director,
Financial Markets and Community Investment

# Appendix I: Objectives, Scope, and Methodology

The reporting objectives were to examine (1) the information required for submitting a report of harm to SaferProducts.gov, (2) the extent to which the information required for submitting a report of harm is sufficient to identify the product and to allow CPSC to review a manufacturer's claim that a report of harm contains materially inaccurate information, and (3) the length of time CPSC takes to review and resolve manufacturers' claims of material inaccuracy in a report of harm.

To address the first objective, we obtained and analyzed electronic data collected by CPSC through SaferProducts.gov. To determine how many reports of harm were submitted by the statutory categories of submitters, we analyzed the electronic data extract that CPSC provided as of July 7, 2011. We found that 5,464 reports of harm were submitted to SaferProducts.gov by the five categories of submitters eligible to file a report of harm—(1) consumers; (2) local, state, or federal government agencies; (3) health care professionals; (4) child service providers; and (5) public safety entities. We then analyzed relevant data fields in order to determine how many of these submitted reports contained the information required for publication on SaferProducts.gov. We found that 2,084 contained the required information. Some of these CPSIA-eligible reports were not listed as published at the time we obtained our data extract because, according to CPSC, they were still within the 10-day window to allow for manufacturer response. Additionally, CPSC explained that for some reports of harm eligible under the Consumer Product Safety Information Act of 2008 (CPSIA), it may have accepted a claim of material inaccuracy and decided not to publish the report. We determined that 1,847 CPSIA-eligible reports of harm were published. Of these, we reviewed relevant data fields to determine how many submitters opted to provide additional information, such whether they or a family member were the victim (1,128 submitters) and consent to manufacturer contact (1,527 submitters). We did not determine whether those submitters who reported that a family member was the victim had firsthand knowledge of the incident of harm. We assessed the reliability of these data by (1) performing electronic testing, (2) reviewing existing information about the data and the system that produced them, and (3) interviewing agency officials knowledgeable about the data and related management controls. Based on this assessment, we determined these data were sufficiently reliable for the purposes of this report.

We also reviewed CPSIA and the safety information database regulation
to determine the eligibility criteria for submitting a report of harm to
SaferProducts.gov, including eight types of required information.[1] We
discussed these requirements with CPSC officials and requested
electronic data from SaferProducts.gov in order to identify the reports of
harm that contained required and optional information, and to ascertain
who submitted these reports.[2] We obtained documentary evidence from
CPSC to understand their review process from the time a report of harm
is submitted to SaferProducts.gov through publication.

Further, we researched other federal government agency Web sites that
have been established for consumer-driven complaints. We determined
that the National Highway Traffic and Safety Administration (NHTSA)
administers a searchable, public consumer-complaint database—
SaferCar.gov—that is most comparable to CPSC's SaferProducts.gov.
We met with NHTSA officials to obtain documentary and testimonial
evidence to determine who submits incident reports of harm, the required
information for publication, and optional information that submitters may
provide. Finally, we interviewed industry representatives, including trade
associations and legal counsel to manufacturers and private labelers, as
well as consumer groups, in order to obtain their views on the eligibility
and publication requirements for reports of harm on SaferProducts.gov.

To address the second objective, we reviewed CPSIA and the safety
information database regulation to determine (1) the type of information
required in a report of harm to identify the consumer product and (2)
CPSC's process to review claims of material inaccuracy. We discussed
these requirements with CPSC officials. To determine how many reports
of harm contained product identification information, particularly such
numeric identifiers as model number or serial number, we obtained and
analyzed electronic data from CPSC's safety information database. We
reviewed the database fields provided and determined that submitters
had entered numeric product identifiers in four database fields: incident
narrative, product description, model, and serial number. We reviewed

---

[1]Pub. L. No. 110-314, 122 Stat. 3016 (2008); 16 C.F.R. § 1102.

[2]As noted above, submitters may provide information beyond what is required for
publication on SaferProducts.gov, such as their relationship to the victim, the model or
serial number of the reported product, and consent to the release of their contact
information to the manufacturer or private labeler.

each of these four fields for 1,847 reports of harm published on
SaferProducts.gov and counted each numeric identifier provided in any of
these fields to determine how many reports of harm contained numeric
product identifiers somewhere in the report. We obtained documentary
and testimonial information from CPSC officials to determine how the
agency developed its statistic that, as of June 2011, 84 percent of reports
of harm contained model information or serial numbers. To examine how
the agency resolved claims of material inaccuracy, including how many
MII claims were accepted, accepted-in-part, or rejected, we analyzed a
data field from the safety information database that contained this
information. To obtain the perspectives of industry and consumer groups
regarding required and optional product identification information in a
report of harm and CPSC's process for reviewing and resolving MII
claims, we conducted interviews with associations of manufacturers and
retailers, attorneys that counsel these groups and individual companies,
consumer advocacy groups, and individual companies that submitted MII
claims. For the latter group, we reviewed CPSC's list of MII claims and
randomly selected two companies with accepted MII claims, two
companies with MII claims that were accepted-in-part, and two
companies with rejected MII claims. Five of these companies responded
affirmatively to our request for an interview, and one did not respond.

To address the third objective, we reviewed CPSIA and the safety
information database regulation to determine (1) the procedural
requirements for transmission of reports of harm to the identified
manufacturer or private labeler within the statutory 10 business day time
frame and (2) CPSC's review time of MII claims from manufacturers and
private labelers. We discussed these requirements with CPSC officials
and requested electronic data and documentary evidence from
SaferProducts.gov in order to identify the reports of harm that were
transmitted to the manufacturer or private labeler, and, of these reports,
those manufacturer comments that CPSC reviewed and determined
whether to publish by the tenth business day. To determine the number
reports of harm to which companies responded, we analyzed the
electronic data extract that CPSC provided as of July 7, 2011. We found
that CPSC published 1,020 reports of harm to which manufacturers or
private labelers responded with general comments, claims of confidential
business information, and MII claims on SaferProducts.gov within the 10
business day statutory time frame.

We also analyzed the electronic data extract that CPSC provided as of July 7, 2011, to determine the number of MII claims that CPSC received from companies. We found that CPSC published 145 reports of harm with MII claims within the 10 business day statutory time frame, and resolved 133 of these claims during this period. While we conducted our audit work, Congress passed amendments to CPSIA, which were signed on August 12, 2011, to extend the 10 business day statutory time frame to 15-business days. Our analysis showed that CPSC would have resolved all but 2 of the reports of harm with MII claims within the statutory time frame for publication had the new 15 business day time frame been in place. As noted previously, we assessed the reliability of these data by (1) performing electronic testing, (2) reviewing existing information about the data and the system that produced them, and (3) interviewing agency officials knowledgeable about the data and related management controls. Based on this assessment, we determined the data to be sufficiently reliable for the purposes of this report. In addition, to address the third objective, we obtained testimonial information about this process from manufacturers and private labelers, as well as legal counsel to companies that have submitted claims of material inaccuracy.

We conducted this performance audit from April 2011 to October 2011 in San Francisco, California; Atlanta, Georgia; and Washington, D.C., in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

# Appendix II: Comments from the Majority Commissioners of the Consumer Product Safety Commission



UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

October 3, 2011

Ms. Alicia Puente Cackley
Director, Financial Markets and Community Investment
U.S. Government Accountability Office
441 G Street, NW
Washington, DC 20548

Dear Ms. Cackley:

We are writing to provide comments of the U.S. Consumer Product Safety Commission (CPSC) on the draft U.S. Government Accountability Office (GAO) report entitled "Action Needed to Strengthen Identification of Potentially Unsafe Products."

The draft report undertook a rigorous assessment of the data collected via the Commission's consumer product incident database, SaferProducts.gov. We appreciate the determination that the database information collection procedures "could enhance CPSC's broader efforts to identify consumer product safety risks and unsafe consumer products in the marketplace." In addition, the CPSC has already taken two concrete steps to address the recommendation in the draft report, which asks the Commission to "enhance the analytic methods it uses to identify product information in a report of harm," by verifying model and serial numbers submitted with consumer product incident reports.

First, on August 15, 2011, CPSC staff began implementing the provisions of section 7 of Public Law 112-28 by reaching out to submitters of reports of harm that lacked model or serial numbers. Any information obtained through this follow-up contact will be included in the incident report posted on SaferProducts.gov.

Second, on September 15, 2011, CPSC staff implemented a strengthened analytical method for reviewing product model and serial number information contained in incoming reports of harm. As part of this strengthened method, Commission staff are reviewing report submissions and are manually entering model and serial numbers provided in other parts of reports into the respective model and serial number fields.

CPSC Hotline: 1-800-638-CPSC (2772) * CPSC's Web Site: http://www.cpsc.gov

**Appendix II: Comments from the Majority
Commissioners of the Consumer Product
Safety Commission**

Ms. Alicia Puente Cackley
October 3, 2011
Page 2

Since the launch of SaferProducts.gov in March 2011, the site has averaged more than 100,000 consumer visits per month. Through the adjustments detailed above, we are pleased to have addressed the requirements of P.L. 112-28 and the GAO recommendations. The net result is a strengthened SaferProducts.gov that will continue to provide useful product safety incident information to consumers for years to come.

Thank you again for providing us with the opportunity to comment on the draft report.

Sincerely,

Inez M. Tenenbaum
Chairman

Robert S. Adler
Vice Chairman

Thomas H. Moore
Commissioner

# Appendix III: Comments from the Minority Commissioners of the Consumer Product Safety Commission



**UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814**

October 4, 2011

Ms. Alicia Puente Cackley
Director, Financial Markets and Community Investment
U.S. Government Accountability Office
441 G Street, NW
Washington, DC 20548

Dear Ms. Cackley:

We are writing as the minority Republican Commissioners on the U.S. Consumer Product Safety Commission to provide our views on the draft U.S. Government Accountability Office (GAO) report entitled "Action Needed to Strengthen Identification of Potentially Unsafe Products."

We agree with the Majority that the draft report undertook an unbiased and scientific assessment of the data collected via the Commission's consumer product incident database, SaferProducts.gov, and concur in your assessment that the Commission should "enhance the analytic methods it uses to identify product information in a report of harm" by verifying model and serial numbers submitted with consumer product incident reports. However, unlike the Majority, we do not believe that the Commission's actions to date have adequately addressed your concerns. Section 7 of Public Law 112-28 does require the Commission to seek the model and serial numbers for products when that information is not included in an incident report, but it is not a condition of publication that such information actually be obtained.

We also believe the GAO Report identifies additional problems with the database that should be more thoroughly examined. For example, we are alarmed that GAO found that only slightly more than one third of all incidents were reported by an individual with firsthand knowledge of the incident. This problem could be better understood if GAO were to audit a representative sample of incident reports posted to SaferProducts.gov to determine the relationship between the submitter and the report, and to gauge the accuracy of the reports. We are particularly concerned about the prevalence of entries based on reports of incidents detailed elsewhere on the Internet. We discovered a number of reports that appear to be verbatim copies of information previously posted on the Internet by parties other than the SaferProducts.gov submitter.

GAO could assist the CPSC further by suggesting other changes that could better protect the public from incorrect information. For example, GAO might recommend that we include the

CPSC Hotline: 1-800-638-CPSC (2772) • www.cpsc.gov

GAO-12-30  Consumer Product Safety Commission

Appendix III: Comments from the Minority
Commissioners of the Consumer Product
Safety Commission

Ms. Alicia Puente Cackley
October 4, 2011
Page 2 of 3

identification and contact information of the consumer, product owner, or injured party, as well
as the approximate date of the injury, in order to establish the age of the product and determine
whether the product is still sold.

We would also like to clarify a statistic offered by the GAO that may cause some
confusion. The report states that 97% of the incidents reported to the Commission come from
consumers. But this statistic may be misleading without an understanding of the Commission's
definition of "consumer." During the rulemaking process, the Commission chose to define
"consumer" to include many parties not commonly understood to be consumers, including
"attorneys," and "consumer advocates or individuals who work for nongovernmental
organizations, consumer advocacy organizations, and trade associations." 16 C.F.R.
§ 1102.10(a). As a result, a report's designation as having been submitted by a "consumer" is
not a reliable proxy for determining whether a report is based on first-hand knowledge. We
objected to this definition and believe that Congress's enumeration of the classes of persons who
may submit an incident report was intended to limit submissions to individuals with a direct
relationship to the product or incident at issue.

The agency's basis for believing that it has increased its control over inaccuracies is
questionable. While manufacturers may comment on—and the CPSC can remove—materially
inaccurate information, the lack of specifics in many cases makes those safeguards trivial. And
while the rule requires the submitter to attest to the accuracy of the report he or she submits, the
attestation is only "to the best of [the submitter's] knowledge," which may amount to no real
knowledge at all.

We are also concerned that the general lack of specific information drives the
consumption of an enormous amount of Commission resources because the agency must work to
recover such information to resolve questions of public safety and material inaccuracy. There
are many instances where the amount of recoverable information is insufficient to resolve these
questions despite time-consuming efforts on the part of the staff to obtain it. The GAO could
provide valuable insight into these problems by determining the number of incidents that are
entered without the contact information of someone who can directly answer questions about the
exact product and incident, and the number of manufacturers that lack enough information (the
exact product identity, the year it was purchased, etc.) to make a Material Inaccuracy claim.
Some reports listing the incorrect manufacturer have been posted only to be taken down after the
agency discovered, almost by coincidence, the misidentification. But current procedures provide
no way to ascertain how many times this has happened or to assess the reasons why incidents
have been removed. All of this information would help improve the database's accuracy and
efficacy for the CPSC and consumers.

Further, it is important to highlight another difficulty that the database creates for
licensors and licensees. The database is only structured to allow one manufacturer to respond to
a report. Thus, when a report lists the brand name of a product and the brand name is being used
under a license, the manufacturer is the only party permitted to respond through the business
portal. While this is generally acknowledged to be a problem, the Commission has not moved to
correct it nor does it appear to have any plans to do so in the near future.

Appendix III: Comments from the Minority
Commissioners of the Consumer Product
Safety Commission

Ms. Alicia Puente Cackley
October 4, 2011
Page 3 of 3

Finally, with respect to the database's usefulness to the public, it is important that the information not only be reliable but also be easily accessible to all users regardless of their knowledge of computers. Most consumer product databases (Amazon.com, Yelp, etc.) offer user-friendly platforms that can be navigated intuitively. Unfortunately, the CPSC's platform is anything but user friendly. We fear that the current search process, as well as the format of SaferProducts.gov, does little to help the average computer user.

In addition to problems with the database's software, we worry about the adequacy of its hardware. The current CPSC system is becoming increasingly slow, and averages a significant number of outages each week. Does the GAO believe that the current system can handle the growing number of incidents and the new additional IT components planned to be added in the near future? We encourage the GAO to expand its investigation to ensure that these significant investments in technology do not result in a final product that neither protects the public nor provides the promised efficiencies.

Since the launch of SaferProducts.gov in March 2011, the site has averaged more than 100,000 visits per month, but it is impossible to identify the classes of users that are visiting this site. They may be actual consumers, manufacturers, CPSC staff, trial lawyers, or consultants. Without that relevant information, it is nearly impossible to determine whether or not the database is providing valuable information for the purchasers of consumer products, or just feeding the agendas of special interest groups.

Thank you again for providing us with the opportunity to comment on the draft report.

Sincerely,

Anne M. Northup
Commissioner

Nancy A. Nord
Commissioner

# Appendix IV: GAO Contact and Staff Acknowledgments

| | |
|---|---|
| **GAO Contact** | Alicia Puente Cackley, (202) 512-8678 or cackleya@gao.gov |
| **Staff Acknowledgments** | In addition to the individual named above, Debra Johnson, Assistant Director; Farah Angersola; Marc Molino; Patricia Moye; Linda Rego; Jennifer Schwartz; Andrew Stavisky; Vanessa Taylor; and Julie Trinder made major contributions to this report. |

| GAO's Mission | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
|---|---|
| Obtaining Copies of GAO Reports and Testimony | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's website (www.gao.gov). Each weekday afternoon, GAO posts on its website newly released reports, testimony, and correspondence. To have GAO e-mail you a list of newly posted products, go to www.gao.gov and select "E-mail Updates." |
| Order by Phone | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's website, http://www.gao.gov/ordering.htm. <br><br> Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. <br><br> Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| Connect with GAO | Connect with GAO on Facebook, Flickr, Twitter, and YouTube. Subscribe to our RSS Feeds or E-mail Updates. Listen to our Podcasts. Visit GAO on the web at www.gao.gov. |
| To Report Fraud, Waste, and Abuse in Federal Programs | Contact: <br><br> Website: www.gao.gov/fraudnet/fraudnet.htm <br> E-mail: fraudnet@gao.gov <br> Automated answering system: (800) 424-5454 or (202) 512-7470 |
| Congressional Relations | Ralph Dawn, Managing Director, dawnr@gao.gov, (202) 512-4400 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7125 <br> Washington, DC 20548 |
| Public Affairs | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7149 <br> Washington, DC 20548 |

Please Print on Recycled Paper