# **<u>APPENDIX</u>**

NO. 12-2209

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
_____

COMPANY DOE,
*Plaintiff - Appellee*,

v.

PUBLIC CITIZEN; CONSUMER FEDERATION OF
AMERICA; and CONSUMERS UNION,
*Parties-in-Interest - Appellants*,

and

INEZ TENENBAUM, in her official capacity as Chairwoman of the
Consumer Product Safety Commission; and CONSUMER
PRODUCT SAFETY COMMISSION,
*Defendants*.
_____

On appeal from the U.S. District Court for the District of Maryland
(Hon. Alexander Williams, Jr., U.S. District Judge)
_____

OPENING BRIEF OF APPELLANTS PUBLIC CITIZEN, CONSUMER
FEDERATION OF AMERICA, AND CONSUMERS UNION

[PAGE PROOF BRIEF PURSUANT TO COURT ORDER]

Scott Michelman
Allison M. Zieve
Julie A. Murray
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC  20009
(202) 588-1000

December 13, 2012

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 4th Cir. R. 26.1, appellants Public Citizen, Consumer Federation of America, and Consumers Union of the United States state that none of them is owned by a parent corporation, and there is no publicly held corporation that owns 10% or more of any appellant.

Public Citizen, Consumer Federation of America, and Consumers Union of the United States know of no publicly held corporation that has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit-sharing agreement, insurance, or indemnity agreement.

Public Citizen, Consumer Federation of America, and Consumers Union of the United States are not trade associations.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF AUTHORITIES ................................................................. iv

REQUEST FOR ORAL ARGUMENT ...................................................1

STATEMENT OF JURISDICTION................................................................1

ISSUE PRESENTED ..............................................................................1

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ...................................................................3

    Statutory and Regulatory Background ...............................................3

    Proceedings Below ....................................................................6

SUMMARY OF ARGUMENT ................................................................11

ARGUMENT ...............................................................................14

I.   THE MOTION TO INTERVENE EITHER WAS OR SHOULD HAVE BEEN GRANTED, AND IN ANY EVENT, CONSUMER GROUPS ARE PROPER APPELLANTS............................14

II.  SEALING THIS CASE VIOLATED BOTH THE FIRST AMENDMENT AND THE COMMON LAW RIGHT OF ACCESS TO JUDICIAL PROCEEDINGS ..................................20

    A. Sealing This Case Violated the First Amendment ...........................22

        1. The First Amendment applies to all of the documents filed with the district court in this case ......................................22

        2. Company Doe has not met its burden under the First Amendment to justify sealing any part of the district court record .......................................................29

B.  Sealing This Case Violated the Common Law Right of
    Access ....................................................................................36

C.  This Court Should Require Expeditious Resolution of
    Motions To Seal ....................................................................41

III. THE DISTRICT COURT ABUSED ITS DISCRETION IN
     PERMITTING THE PLAINTIFF'S USE OF A PSEUDONYM .................43

CONCLUSION .................................................................................49

CERTIFICATIONS ...........................................................................50

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ashbourne v. Geithner*,
  2012 WL 2874012 (D. Md. July 12, 2012) ..................................................47

*Baltimore Sun Co. v. Goetz*,
  886 F.2d 60 (4th Cir. 1989) ..........................................................................21

*Baxter International, Inc. v. Abbott Laboratories*,
  297 F.3d 544 (7th Cir. 2002) ........................................................................25

*Beckman Industries, Inc. v. International Insurance Co.*,
  966 F.2d 470 (9th Cir. 1992) ........................................................................17

*Brown v. Advantage Engineering, Inc.*,
  960 F.2d 1013 (11th Cir. 1992) ....................................................................17

*Brown & Williamson Tobacco Corp. v. FTC*,
  710 F.2d 1165 (6th Cir. 1983) ........................................................22, 23, 31

*Central National Bank of Mattoon v. United States Department of Treasury*,
  912 F.2d 897 (7th Cir. 1990) ..................................................................30, 31

*Coe v. United States District Court*,
  676 F.2d 411 (10th Cir. 1982) ......................................................................46

*Columbus-America Discovery Group v. Atlantic Mutual Insurance Co.*,
  203 F.3d 291 (4th Cir. 2000) ..................................................................23, 25

*Courthouse News Service v. Jackson*,
  2009 WL 2163609 (S.D. Tex. July 20, 2009) ..............................................27

*Davis v. Scott*,
  176 F.3d 805 (4th Cir. 1999) ........................................................................19

*Dixon v. Edwards*,
  290 F.3d 699 (4th Cir. 2002) ..................................................................15, 16

iv

*Doe v. Blue Cross & Blue Shield United of Wisconsin*,
    112 F.3d 869 (7th Cir. 1997) ........................................................................48

*Doe v. Frank*,
    951 F.2d 320 (11th Cir. 1992) ..........................................................43, 44, 48

*Doe v. Megless*,
    654 F.3d 404 (3d Cir. 2011) .......................................................44, 46, 47, 48

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ........................................................................43

*Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ...............................................................44, 48

*EEOC v. National Children's Center, Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998)....................................................................17

*FCC v. AT&T Inc.*,
    131 S. Ct. 1177 (2011)...................................................................................45

*FTC v. Standard Financial Management Corp.*,
    830 F.2d 404 (1st Cir. 1987)...................................................................23, 40

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)........................................................................................32

*Femedeer v. Haun*,
    227 F.3d 1244 (10th Cir. 2000) .............................................................44, 48

*Free Market Compensation v. Commodity Exchange, Inc.*,
    98 F.R.D. 311 (S.D.N.Y. 1983)....................................................................46

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ........................................................................26

*Good News Club v. Milford Central School*,
    533 U.S. 98 (2001)..........................................................................................32

*Hammock v. Hoffmann-LaRoche, Inc.*,
    662 A.2d 546 (N.J. 1995) ...............................................................38

*Hartford Courant Co. v. Pellegrino*,
    380 F.3d 83 (2d Cir. 2004) .......................................................27, 28

*In re Associated Press*,
    162 F.3d 503 (7th Cir. 1998) ..................................................17, 18

*In re Charlotte Observer*,
    882 F.2d 850 (4th Cir. 1989) ..................................................36, 41

*In re Grand Jury Proceedings Under Seal*,
    947 F.2d 1188 (4th Cir. 1991) ......................................................16

*In re Iowa Freedom of Information Council*,
    724 F.2d 658 (8th Cir. 1983) ........................................................22

*In re Omnicom Group, Inc. Securities Litigation*,
    2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006) ................................27

*In re Providence Journal Co.*,
    293 F.3d 1 (1st Cir. 2002) .......................................................22, 26

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991) ........................................................15

*In re State-Record Co.*,
    917 F.2d 124 (4th Cir. 1990) ..................................................21, 27

*James v. Jacobson*,
    6 F.3d 233 (4th Cir. 1993) ....................................................*passim*

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989)........................................................................47

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982) ..................................................24, 30

*Kenny v. Quigg*,
    820 F.2d 665 (4th Cir. 1987) ........................................................19

*Littlejohn v. Bic Corp.*,
    851 F.2d 673 (3d Cir. 1988) ........................................................30

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ...........................................22, 24, 42

*Lytle v. Griffith*,
    240 F.3d 404 (4th Cir. 2001) ........................................................16

*Massachusetts v. Microsoft Corp.*,
    373 F.3d 1199 (D.C. Cir. 2004)....................................................18

*Matter of Application and Affidavit for a Search Warrant*,
    923 F.2d 324 (4th Cir. 1991) ..................................................41, 42

*Matter of Baby K*,
    16 F.3d 590 (4th Cir. 1994) .........................................................47

*Matter of Continental Illinois Securities Litigation*,
    732 F.2d 1302 (7th Cir. 1984) ......................................................41

*Matter of Krynicki*,
    983 F.2d 74 (7th Cir. 1992) ..........................................................28

*Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*,
    1988 WL 71197 (N.D. Ill. June 24, 1988).....................................27

*Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*,
    823 F.2d 159 (6th Cir. 1987) ........................................................17

*Minter v. Wells Fargo Bank, N.A.*,
    258 F.R.D. 118 (D. Md. 2009) ................................................26, 27

*National Commodity & Barter Ass'n v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) .............................................46, 47

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..................................................................33

*Newman v. Graddick*,
    696 F.2d 796 (11th Cir. 1983) ..............................................22

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589 (1978)..................................................................36

*Organization for a Better Austin v. Keefe*,
    402 U.S. 415 (1971)..................................................................32

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ......................................17, 19, 38

*Pepsico, Inc. v. Redmond*,
    46 F.3d 29 (7th Cir. 1995) ......................................................24

*Public Citizen v. Liggett Group, Inc.*,
    858 F.2d 775 (1st Cir. 1988)..............................................17, 37

*Publicker Industries, Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ........................................22, 26, 30

*Qualls v. Rumsfeld*,
    228 F.R.D. 8 (D.D.C. 2005) ....................................................46

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)..................................................................32

*Republic of the Philippines v. Westinghouse Electric Corp.*,
    949 F.2d 653 (3d Cir. 1991) ......................................26, 30, 40, 41

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980)..............................................................22, 23

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988) ..........................................*passim*

*Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*,
  599 F.2d 707 (5th Cir. 1979) ........................................................................46

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) ...........................................................43, 44, 48

*Siedle v. Putnam Investments, Inc.*,
  147 F.3d 7 (1st Cir. 1998)..............................................................................30

*Stone v. University of Maryland Medical System Corp.*,
  855 F.2d 178 (4th Cir. 1988) .......................................................19, 20, 21, 25

*Under Seal v. Under Seal*,
  27 F.3d 564, 1994 WL 283977 (4th Cir. June 27, 1994) ..............................30

*Union Oil Co. v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ...............................................11, 24, 29, 30, 34

*United Nuclear Corp. v. Cranford Insurance Co.*,
  905 F.2d 1424 (10th Cir. 1990) ....................................................................17

*United States v. Gomez*,
  690 F.3d 194 (4th Cir. 2012) ........................................................................15

*United States v. King Pharmaceuticals, Inc.*,
  806 F. Supp. 2d 833 (D. Md. 2011).............................................................46

*United States v. Mentzos*,
  462 F.3d 830 (8th Cir. 2006) ........................................................................24

*United States v. Moussaoui*,
  65 F. App'x 881 (4th Cir. 2003) ...................................................................18

*United States v. Ochoa-Vasquez*,
  428 F.3d 1015 (11th Cir. 2005) ....................................................................28

*United States v. Valenti*,
  987 F.2d 708 (11th Cir. 1993) ......................................................................27

*Vassiliades v. Israely*,
        714 F. Supp. 604 (D. Conn. 1989)...............................................27

*Virginia Department of State Police v. Washington Post*,
        386 F.3d 567 (4th Cir. 2004) ...........................................*passim*

*Whitney v. California*,
        274 U.S. 357 (1927)..........................................................33

*Wilson v. America Motors Corp.*,
        759 F.2d 1568 (11th Cir. 1985) .............................................30

## STATUTES AND REGULATIONS

15 U.S.C. § 2055a ..........................................................3, 5, 32, 39

28 U.S.C. § 1291 ....................................................................1

28 U.S.C. § 1331 ....................................................................1

16 C.F.R. § 1102.26 ...............................................................32

## RULES

4th Cir. R. 32.1.................................................................18, 30

D. Md. Loc. R. 102(2)............................................................43

D. Md. Loc. R. 105(11)........................................................6, 19

Fed. R. App. P. 4 ...................................................................1

Fed. R. App. P. 32.1.........................................................18, 30

Fed. R. Civ. P. 10 ................................................................43

Fed. R. Civ. P. 24 ................................................................18

## GOVERNMENT DATABASE WEBSITES

www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/search.CFM (FDA).......39

www.safercar.gov (NHTSA) ................................................................................39

www.saferproducts.gov (CPSC).......................................................................4, 5

## OTHER AUTHORITIES

CPSC, Supplemental Statement of Commissioner Robert Adler Regarding
    the Publicly Available Consumer Product Safety Information
    Database Rule (Jan. 14, 2011) ........................................................................4

*Consumer Watchdogs*, N.Y. Times, Mar. 3, 2008................................................39

Dina ElBoghdady, *CPSC Database Faces First Legal Challenge*, Wash.
    Post, Oct. 18, 2011 ...........................................................................................6

Eric Lipton, *Dangerous Sealer Stayed on Shelves After Recall*, N.Y. Times,
    Oct. 8, 2007......................................................................................................39

H.R. Rep. No. 110-501 (2007)........................................................................4, 35

House Committee on Energy & Commerce, Democratic Staff, *Evaluation of
    the Consumer Product Safety Database* (July 2011) ...................................4, 5

Jennifer C. Kerr, *CPSC's Public Database Faces First Legal Challenge*,
    Assoc. Press, Oct. 18, 2011 .............................................................................6

Letter from Rep. Edward J. Markey to Nancy A. Nord, CPSC Chair (Feb.
    25, 2008) ........................................................................................................38

Public Citizen, *Hazardous Waits: CPSC Lets Crucial Time Pass Before
    Warning Public About Dangerous Products*, at 1 (Jan. 2008).....................38

Publicly Available Consumer Product Safety Information Database, Final
    Rule, 75 Fed. Reg. 76,832, 76,832 (Dec. 9, 2010) ............................................3

*Put Complaints Online*, U.S.A. Today, Mar. 5, 2008, at 10A .................................39

Vicki Lee Parker, *Agency That Protects Consumers Is in Need of Help*,
    Orlando Sentinel, Mar. 2, 2008 ......................................................39

Wright & Miller et al., 5A Fed. Prac. & Pro. Civ. § 1321 (3d ed. 2004 &
    Supp. 2012) ...................................................................................43

Wright, Miller & Cooper, 15A Fed. Prac. & Pro. Juris. § 3902.1 (2d ed.
    1991 & Supp. 2012) ..........................................................................15, 16

## REQUEST FOR ORAL ARGUMENT

Appellants (hereinafter "Consumer Groups") respectfully request oral argument in light of the importance and novelty of the issues presented. The principle that a risk to corporate reputation justifies sealing judicial records and/or permitting a plaintiff to proceed under a pseudonym is one that no court has adopted except the district court here. This case is also the first challenge to the implementation of the Consumer Product Safety Improvement Act of 2008.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal from a district court's final judgment. 28 U.S.C. § 1291. The district court had jurisdiction under 28 U.S.C. § 1331. The district court's decision, entered July 31, 2012, disposed of all parties' claims, and this appeal was timely filed within sixty days after the judgment, on September 28, 2012. *See* Dkt 67 at 2-3; Fed. R. App. P. 4(a)(1)(B).

## ISSUES PRESENTED

1.   Appellants Consumer Groups have participated in this case from its inception by objecting to plaintiff-appellee's motion to seal, in accordance with a local rule authorizing such participation. After the district court issued its judgment, Consumer Groups moved to intervene for the purpose of appealing the order granting the motion to seal. Shortly after Consumer Groups filed their notice of appeal, the district court granted the motion nunc pro tunc. Was the district court's grant of intervention effective, and if not, are Consumer Groups otherwise a proper appellant — either because the district court's failure to grant intervention before the appeal deadline was an abuse of discretion, or because Consumer Groups can appeal as a non-party

1

by virtue of their participation below and the fact that they are bound by the adverse decision?

2.    In this first-ever challenge to the implementation of a new government database designed to provide consumers information about product safety, a product manufacturer sued the Consumer Product Safety Commission to enjoin publication in the database of a report about one of the company's products. Did the district court err in granting the company's motion to seal the case on the ground that the company's desire to avoid potentially adverse publicity overrides the public's First Amendment and common law rights of access to court proceedings?

3.    Did the district court abuse its discretion in permitting a company to litigate under a pseudonym to protect its business reputation?

## <u>STATEMENT OF THE CASE</u>

This appeal concerns judicial secrecy. The underlying action concerns whether a particular report of harm concerning a consumer product may be published in the online consumer product safety database maintained by the Consumer Product Safety Commission (CPSC). In October 2011, plaintiff-appellee "Company Doe" sued the CPSC to keep a report about one of the Company's products from being published in the database. The Company also sought to litigate its case under seal and without revealing its true name. Pursuant to a local rule, Consumer Groups objected to the motion to seal and proceed under a pseudonym. The CPSC also objected to the motion. The district court did not rule on the motion for nine months; in the interim, it conducted secret proceedings on the merits.

On July 31, 2012, without releasing its opinion to the public, the district court granted summary judgment to Company Doe and granted the Company's motion to seal the case and proceed pseudonymously. Consumer Groups then moved to intervene for the purpose of appealing the sealing and pseudonym rulings; Company Doe did not object. On September 28, Consumer Groups appealed, as did the CPSC (though the CPSC subsequently dismissed its appeal on December 7). On October 9, the district court granted Consumer Groups intervention nunc pro tunc. On October 22, the court's July 31 decision was made available to the public with the name of the plaintiff, the facts of the case, and the court's application of law to facts redacted.

## STATEMENT OF FACTS

### *Statutory and Regulatory Background*

In the Consumer Product Safety Improvement Act of 2008 (CPSIA), Congress required the CPSC to create a publicly available, web-accessible, searchable database for consumer complaints about product safety. *See* 15 U.S.C. § 2055a. Before the creation of this web-based database, the CPSC maintained a repository of some of this information, which it could release to the public only after following lengthy procedures. *See* Publicly Available Consumer Product Safety Information Database, Final Rule, 75 Fed. Reg. 76,832, 76,832 (Dec. 9, 2010). As a result, reports of dangerous products rarely reached consumers who,

3

had they been armed with that knowledge, might have avoided harm and even death.[1] In response to this problem, Congress required the creation of an accessible database to "rapidly provide consumers with 'early warning' information about specific products that could pose serious safety hazards"; this database was intended to be similar to those already in existence at the National Highway Traffic Safety Administration (NHTSA) and the Food and Drug Administration (FDA). H.R. Rep. No. 110-501, at 34 (2007).

The database was launched on March 11, 2011. Op. 3. As of the filing of this brief, it included more than 11,500 incident reports.[2] The reports, submitted by members of the public, state and local agencies, public safety officials, health care professionals, medical examiners, and child service providers, concern products such as kitchen appliances, nursery equipment and supplies, clothing, children's toys, furniture, garden products, and electronics.[3] The reports in the database are

---

[1] *See, e.g.*, CPSC, Supp. Statement of Comm'r Robert Adler Regarding the Publicly Available Consumer Product Safety Information Database Rule (Jan. 14, 2011), at 2-3 (discussing two infants who died because of hazardous cribs), *available at* http://www.cpsc.gov/pr/adler01142011.pdf.

[2] *See* http://www.saferproducts.gov/Search/default.aspx (click/download "Public Database Export" on the right-hand side of the page to download a Microsoft Excel file of the reports).

[3] *See* House Comm. on Energy & Commerce, Democratic Staff, *Evaluation of the Consumer Prod. Safety Database* (July 2011), at 2, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/CPSCDatabaseReport_07.07.11.pdf.

accessible via a website, www.saferproducts.gov, which permits visitors to search for reports by type of product, date of report, or keywords contained in the report. The website received more than 305,000 visits within its first four months.[4]

Before posting a complaint, the agency must remove information it has determined to be materially inaccurate, 15 U.S.C. § 2055a(c)(4)(A), but to avoid delays in making reports available, the agency is under a strict statutory mandate to publish reports within twenty business days of receipt, even if the information in the report has not been confirmed, *see id.* § 2055a(c)(1), (c)(3)(A) & (c)(4)(A). To avoid consumer overreliance on unverified information, the website contains a disclaimer that "CPSC does not guarantee the accuracy, completeness, or adequacy of the contents of the Publicly Available Consumer Product Safety Information Database on SaferProducts.gov, particularly with respect to information submitted by people outside of CPSC."[5] Manufacturers have the opportunity to review complaints regarding products they manufacture, object to the inclusion of information that is materially inaccurate or confidential, and provide responsive comments that are posted to the database. *See* 15 U.S.C. § 2055a(c)(1)-(4).

---

[4] *See id.* at 3.

[5] This statement appears at the bottom of the front page of the website www.saferproducts.gov.

*Proceedings Below*

In October 2011, a manufacturer of consumer products calling itself "Company Doe" filed suit under the Administrative Procedure Act (APA) and the Fifth Amendment against the CPSC and its Chairwoman, Commissioner Inez Tenenbaum, to enjoin them from including in the database a report about one of Company Doe's products. Op. 7. Simultaneously with its complaint, the Company filed a motion to litigate the entire case under seal and under a pseudonym. Op. 7. Although the complaint was under seal, the existence of the case received press coverage in such media outlets as the Washington Post and Associated Press.[6] Proceeding under a local rule permitting interested parties to object to a motion to seal, *see* D. Md. Loc. R. 105(11), Public Citizen, Consumer Federation of America, and Consumers' Union (collectively "Consumer Groups") — organizations that advocated passage of the CPSIA due to the serious limitations on the CPSC's ability, prior to the CPSIA, to address product safety hazards and protect the public — filed objections to the motion to seal and use a pseudonym. Op. 9. The government also opposed the Company's motion. Op. 10.

---

[6] *See, e.g.*, Dina ElBoghdady, *CPSC Database Faces First Legal Challenge*, Wash. Post, Oct. 18, 2011; Jennifer C. Kerr, *CPSC's Public Database Faces First Legal Challenge*, Assoc. Press, Oct. 18, 2011, *available at* http://www.boston.com/news/nation/articles/2011/10/18/cpscs_public_database_faces_first_legal_challenge.

While the motion was pending, the district court kept under seal all papers filed in the case, other than the motion itself. With the exception of that one entry, the docket was also sealed. Even the briefing regarding the motion to seal (including the objections of Consumer Groups, who lacked any knowledge about the facts of the case) remained under seal. On December 6, 2011, Consumer Groups moved to unseal the briefing related to the motion to seal. Op. 10.

The district court did not issue any ruling on sealing and pseudonymity until July 2012. Meanwhile, the litigation proceeded. As the court's opinion recounts, Company Doe moved for a preliminary injunction; the government moved to dismiss; the government revised the report it intended to publish on the database; the Company continued to dispute the report through the administrative process; both sides conducted scientific analyses regarding the report; the Company amended its complaint; the court heard oral argument; and the parties filed cross-motions for summary judgment. Op. 8-16. All of these proceedings occurred in secret, not even reflected on the public docket.

On July 31, 2012, in an opinion ultimately released to the public with significant redactions nearly three months later, the district court granted summary judgment to Company Doe on its APA claim and permanently enjoined the CPSC from publishing the report at issue. The crux of the court's reasoning on the merits, it appears, was that the report showed no causal link nor even a "relation" between

Company Doe's product and the harm reported. Op. 35-54. The court's analysis of the facts appears to rely on expert testimony and the administrative record, but key portions of the analysis, including all facts and expert opinions, remain sealed. Op. 38-43, 45-52. The court attributed the agency's position to "an admixture of post-hoc rationalization and speculation," which led the agency to engage in "erratic behavior" and commit "a gross abuse of discretion." Op. 54. The court therefore permanently enjoined publication of the report. Op. 66. The court's opinion refers to a "separate Order . . . containing instructions on how the Parties should proceed," Op. 73, but that Order remains under seal.

The court's opinion also granted in part Company Doe's motion to seal and proceed under a pseudonym, and denied Consumer Groups' motion to unseal the papers related to the motion to seal. Op. 66-73. According to the district court, the Company's reputational interest outweighed both the common law and First Amendment rights of access to judicial records because the challenged report of harm is "materially inaccurate, injurious to Plaintiff's reputation, and risks harm to Plaintiff's economic interests." Op. 68. Because Company Doe had won "an injunction evermore enjoining the report's publication," unsealing the case would, in the district court's view, "sacrifice the same right [the Company] sought to safeguard by filing suit." Op. 68. The district court found that the arguments against sealing "share an overarching flaw: they presume that the public has an

interest in the subject matter of this suit." Op. 69. Nonetheless, recognizing that the public retained "some residual interest" in learning how the court had construed the CPSIA, the court decided to permit the publication of certain documents as redacted, in order to "strike[] a balance between the public's abstract interest in learning of the CPSIA's interpretive fate with Plaintiff's comparably concrete interest in preserving its reputational and fiscal health." Op. 69-70. The court therefore ordered Company Doe to propose redactions to the documents in the court record, and the court "prognosticated the propriety of heavy redactions." Op. 70. The court assumed that, with respect to some documents, redaction would not suffice to protect Company Doe's interests, and the court suggested it would not unseal such documents because to do so would "reduce *Plaintiff's* First Amendment interest in petitioning the Court for redress of its grievance to a Hobson's choice, a figurative fork that would fly in the face of fundamental notions of fairness." Op. 70 (emphasis in original). The court also permitted the Company to use a pseudonym because the potential prejudice to the Company of proceeding openly outweighed any unfairness to the government of having to litigate against a pseudonymous opponent. Op. 71-72.

Consumer Groups moved to intervene for the purpose of appealing the seal and pseudonym rulings. Neither Company Doe nor the CPSC opposed the motion. Dkt 67, at 2, 7.

On September 28, Consumer Groups appealed the sealing and pseudonym rulings, as well as the district court's constructive denial of their motion to intervene by its failure to act by the deadline to appeal. Dkt 67, at 3. The government also appealed. *Id.*

On October 9, the court granted Consumer Groups' motion to intervene nunc pro tunc. Dkt 67, at 7. Company Doe subsequently moved the court to revise its order to reflect that Company Doe might later wish to object to Consumer Groups' intervention (despite not having done so when the motion was filed) if the government does not pursue its appeal; in response, the court stated that the Company would be permitted to revisit the question of intervention if the government decides not to pursue its appeal. Dkt 73, at 1-2. The government ultimately dismissed its appeal on December 7, and the Company has since indicated it intends to move the district court to reconsider its intervention ruling.

On October 22, nearly three months after it had decided the case, the court made a redacted version of its decision publicly available. As of the filing of this brief, nearly all of the documents in the record remain under seal: none of the docket entries generated between Company Doe's initial motion to seal and the granting of summary judgment is publicly available. On the docket, only 7 docket entries are visible to the public, and only 5 of the listed entries are unsealed, although the docket numbering indicates that at least 79 entries exist.

## SUMMARY OF ARGUMENT

Because "[w]hat happens in the halls of government is presumptively public business," courts in this country "issue public decisions after public arguments based on public records." *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). This case, however, proceeded from filing to judgment with a secret plaintiff, secret arguments, and secret facts. At the same time it granted summary judgment for the plaintiff, the court ruled that crucial facts about the case, including the plaintiff's identity and the court's fact-based reasons for granting judgment to the plaintiff, will remain permanently sealed. The seal imposed in this case is incompatible with our law and national tradition of public access to court proceedings.

1.    As a threshold matter, Consumer Groups are proper appellants for one of three reasons: (1) the district court's grant of intervention was effective; (2) if the grant of intervention was ineffective (or is subsequently revoked by the district court), the district court's constructive (or actual) denial of intervention was an abuse of discretion; and (3) regardless of their status as intervenors, Consumer Groups are entitled to appeal because they have participated in this case from the outset and are bound by the district court's adverse decision.

2.    The Supreme Court and this Court have long recognized that the public has both a First Amendment and a common law right of access to court

11

proceedings, so that the courts, no less than other branches of government, are subject to public scrutiny. That interest is especially acute in this case, the first-ever legal challenge to a report in the CPSC's consumer product safety database. Without knowing the facts underlying the court's analysis, it is impossible for the public to evaluate the court's conclusions or understand the scope of its decision and its implications for the future functioning of the government system for informing the public about reports of unsafe consumer products. This result cannot be reconciled with the First Amendment and the common law rights to open judicial proceedings.

Under the First Amendment, court proceedings and records cannot be sealed except to serve a compelling interest; under the common law, sealing requires a significant interest that heavily outweighs the public interest in transparency. Company Doe's interest in judicial secrecy here is not significant, much less compelling. Courts of appeals around the country, including this one, have consistently rejected the notion that protecting corporate reputation justifies sealing a case.

The district court's rationale — that declining to seal the case would cause Company Doe to lose the right it seeks to protect through this litigation — is incorrect. Company Doe's claims, as described by the district court, challenge the publication of a report about its product *in the CPSC database*, not disclosure or

discussion of that report in any forum whatsoever. Barring all public knowledge about the facts underlying this litigation is not necessary to grant Company Doe the relief it seeks; on the contrary, the district court's sealing order has granted the Company relief that sweeps far beyond the scope of the Company's claims.

The district court feared that public discussion of this case and the accusations about Company Doe's product could engender opinions of the Company that are unfair or incorrect. But the First Amendment does not permit courts to block public discussion of a topic because of the possibility of "false" speech on that topic. Rather, the First Amendment trusts the people to decide controversial issues for themselves through the free exchange of ideas. If allowed to stand, the decision below would encourage even more secret litigation, in contravention of the First Amendment and common law tradition of court transparency.

Even assuming the Company's interest in preventing bad publicity ranked as compelling at the outset of the litigation (a point Consumer Groups vigorously dispute), that interest has surely dissipated at this point, because the district court's redacted decision shows that the court has completely vindicated the Company and its product. Continued sealing therefore does not even serve the interest that the district court thought justified sealing the case in the first place.

**3.**     The district court abused its discretion in allowing the use of a pseudonym. The privilege of proceeding as a "Doe" plaintiff is a rare dispensation granted to protect only sensitive, personal interests. No court has endorsed, and several of this Court's sister circuits have rejected, the proposition that a risk to business reputation justifies pseudonymity. Moreover, as this Court has explained, pseudonymity is not available to avoid the ordinary annoyance and criticism that may attend any litigation.

The district court's decision to seal portions of its opinion and the record and to permit the use of a pseudonym should be reversed.

## **ARGUMENT**

## I.     THE MOTION TO INTERVENE EITHER WAS OR SHOULD HAVE BEEN GRANTED, AND IN ANY EVENT, CONSUMER GROUPS ARE PROPER APPELLANTS.

The district court did not act on Consumer Groups' motion to intervene prior to the expiration of the time to appeal; accordingly, one of the issues Consumer Groups appealed was the constructive denial of their motion to intervene. Shortly after the filing of the appeal, the district court granted Consumer Groups' motion nunc pro tunc. Dkt 67 at 7. (Company Doe has recently indicated that it intends to seek reconsideration of that order.)

Consumer Groups are proper appellants for one of three reasons: (1) the district court's grant of intervention was effective; (2) if the grant of intervention

was ineffective (or if the district court revokes it on Company Doe's motion for reconsideration), the district court's constructive (or actual) denial of intervention was an abuse of discretion; and (3) regardless of their status as intervenors, Consumer Groups are entitled to appeal because they have participated in this case from the outset and are bound by the district court's adverse decision. Questions of law (the first and third arguments) are reviewed de novo. *E.g., United States v. Gomez*, 690 F.3d 194, 197 (4th Cir. 2012). A denial of intervention (the second argument) is reviewed for abuse of discretion. *E.g., In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991).

*First*, the district court's grant of intervention should be given effect. Other courts of appeals are divided on the question whether the filing of a notice of appeal deprives a district court of jurisdiction to grant intervention, and this Court has not weighed in. *See* Wright, Miller & Cooper, 15A Fed. Prac. & Pro. Juris. § 3902.1 (2d ed. 1991 & Supp. 2012). Nonetheless, permitting the district court to act would be more consistent with this Court's pragmatic approach to the powers of a district court during appeal. Although a notice of appeal generally divests a district court of jurisdiction, a "district court does not lose jurisdiction to proceed as to matters in aid of the appeal." *Dixon v. Edwards*, 290 F.3d 699, 709 n.14 (4th Cir. 2002) (citation and internal quotation marks omitted). For instance, a notice of appeal does not deprive a district court of its authority to hold a hearing and make

supplemental findings on an issue relevant to the appeal, *see In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1189-90 (4th Cir. 1991), or to clarify the language of an injunction under appeal, *see Dixon*, 290 F.3d at 709 & n.14; *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001). Likewise, the notice of appeal should not deprive a district court of jurisdiction to grant intervention to parties who moved to intervene when the case was before the district court, timely filed a notice of appeal, and have been participating in the proceedings since the outset. The district court's grant of intervention here assists the appellate process by acknowledging Consumer Groups' role as participants in the proceedings and thus "relieving [this Court] from considering the substance of an issue" it does not need to consider. *Lytle*, 240 F.3d at 407 n.2; *see also* Wright, Miller & Cooper, 15A Fed. Prac. & Pro. Juris. § 3902.1 ("Although a notice of appeal ousts district court jurisdiction for most purposes, it would be better to recognize that the district court can act [on a motion to intervene]. The district court need not be given a preliminary education about the case to support an intelligent ruling, and its action is in support of the appeal process, not in derogation of it." (footnote omitted)). The district court's granting of intervention nunc pro tunc should be deemed effective.

*Second*, in the alternative, if the district court's order came too late and thus the motion for intervention was constructively denied (or if the district court

revokes its grant of intervention on Company Doe's motion for reconsideration),

the denial of intervention was an abuse of discretion. *See James v. Jacobson*, 6

F.3d 233, 239 (4th Cir. 1993) (noting that a court can abuse its discretion by failing

to exercise discretion at all). The courts of appeals are in broad agreement that

permissive intervention is appropriate where a third party seeks to obtain access to

judicial records. *See, e.g., In re Assoc. Press*, 162 F.3d 503, 507 (7th Cir. 1998)

("[T]he most appropriate procedural mechanism [to enable third parties to obtain

access to court proceedings and documents] is by permitting those who oppose the

suppression of the material to intervene for that limited purpose."); *EEOC v. Nat'l

Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) ("[E]very circuit court

that has considered the question has come to the conclusion that nonparties may

permissively intervene for the purpose of challenging confidentiality orders.");

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994); *Beckman

Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472-73 (9th Cir. 1992); *Brown v.

Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992); *United Nuclear

Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v.

Liggett Group, Inc.*, 858 F.2d 775, 783-84 (1st Cir. 1988); *Meyer Goldberg, Inc. of

Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987). As the Seventh

Circuit explained, providing "full protection" for the public rights of access

"*requires* that the issue be examined in a procedural context that affords the court

17

an opportunity for due deliberation." *In re Assoc. Press*, 162 F.3d at 507 (emphasis

added). Intervention is just such a procedural context, *see id.*; without it, the public

rights of access under the First Amendment and common law will often go

unrepresented.

Consistent with the consensus among the federal courts, this Court has

granted leave to intervene to permit the filing of a motion for access to the

appellate record, *see United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir.

2003),[7] and has decided on the merits several appeals in which third parties

intervened to seek access to judicial records, *see, e.g., Va. Dep't of State Police v.*

*Wash. Post*, 386 F.3d 567, 572 (4th Cir. 2004); *Rushford v. New Yorker Magazine,*

*Inc.*, 846 F.2d 249, 250 (4th Cir. 1988).

Intervention poses no risk of prejudice or delay to the original parties, *see*

Fed. R. Civ. P. 24(b)(3), where, as here, the underlying dispute between the parties

has already been resolved, and the proposed intervenors and their concerns have

been present in the case from the start. *See Massachusetts v. Microsoft Corp.*, 373

F.3d 1199, 1236 (D.C. Cir. 2004). Nor does the fact that the underlying dispute

between the parties has been resolved render a motion to intervene untimely. *See*

---

[7] Consumer Groups cite this unpublished disposition, which is available in a
publicly accessible electronic database, because of its value to a material issue in
this case and the absence of a published circuit opinion that would serve as well.
*See* Fed. R. App. P. 32.1; 4th Cir. R. 32.1.

*Pansy*, 23 F.3d 778-80 (so holding and citing additional authorities). In accordance with the prevailing view among the circuits, and the practice of this Court, failure to grant intervention here would have been an abuse of discretion.

*Third*, regardless of their status as intervenors, Consumer Groups are entitled to appeal as "interested parties" who filed objections to the seal and have participated in this case from the outset in that capacity under a local rule authorizing such participation. *See* D. Md. Loc. R. 105(11). As this Court has recognized, non-parties may appeal where (1) they have participated in the proceedings below and (2) they have a substantial interest in the outcome of the proceedings. *See Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir. 1987); *see also Davis v. Scott*, 176 F.3d 805, 807 (4th Cir. 1999) (reaffirming and applying the *Kenny* standard).

Here, Consumer Groups participated in the proceedings below by objecting to the Company's motion to seal and filing their own motion to unseal. Consumer Groups have a substantial interest because they are bound by the seal, which deprives them of access to meaningful parts of the district court opinion and record on a matter of public concern. Moreover, the local rule under which Consumer Groups participated implements the directive of this Court that a district court must provide the public with an opportunity to object to a proposed seal. *See, e.g.*, *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) ("[A] court

must first give the public notice of a request to seal and a reasonable opportunity to challenge it."). It would be anomalous to provide an opportunity for interested parties to object a proposed seal and then deny them the opportunity to seek review of an adverse decision.

If objectors seeking to unseal court records were not permitted to appeal, the public's ability to vindicate the right of access to any judicial proceedings would rest entirely in the hands of the parties, who in many cases jointly agree to seal a case and in any event have little incentive to appeal a sealing order that covers material they have already seen. *See, e.g.*, *id.* at 180, 182 (ordering district court to reconsider sealing decision even though both parties jointly sought seal). This Court should not allow sealing decisions of constitutional magnitude to evade appellate review.

Accordingly, Consumer Groups were or should have been granted intervention and, in any event, are proper appellants.

## II.   SEALING THIS CASE VIOLATED BOTH THE FIRST AMENDMENT AND THE COMMON LAW RIGHT OF ACCESS TO JUDICIAL PROCEEDINGS.

Judicial proceedings are presumptively open to the public. *See, e.g.*, *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (hereinafter "*VDSP*"). The right of public access to court documents and materials derives from two independent sources: the First Amendment and the common law. *Id.* at 575.

"Because the First Amendment and the common law provide different levels of protection, it is necessary to determine the source of the . . . right of access" in any given case. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988).

The First Amendment standard is the more demanding: secrecy may not be imposed absent a compelling government interest. *VDSP*, 386 F.3d at 575. The common law presumption of access may be overcome if "significant" interests "heavily outweigh the public interests in access." *Id.* (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)) (internal quotation marks omitted).

The burden to meet either standard is on the party seeking to restrict public access. *See id.* at 575; *Rushford*, 846 F.2d at 253. Additionally, a court "must consider less drastic alternatives to sealing." *VDSP*, 386 F.3d at 576.  This Court has described this rule as a "narrow tailoring" requirement under both the First Amendment, *Rushford*, 846 F.2d at 253, and the common law right of access, *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (4th Cir. 1989).

The propriety under the First Amendment of denying public access to judicial documents is reviewed de novo. *In re State-Record Co.*, 917 F.2d 124, 127 (4th Cir. 1990). Applications of the common law standard are reviewed for abuse of discretion, *see id.*, but "[s]ince only the most compelling reasons can justify

non-disclosure of judicial records that come within the scope of the common-law right of access, this review is more rigorous than garden-variety abuse of discretion review." *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002) (citation and internal quotation marks omitted).

Under both standards, sealing any part of this case was inappropriate, because Company Doe has shown no compelling interest, nor even a "significant" interest that "heavily outweighs" the public interest in access. This Court should therefore order that the entire record below be unsealed.

### A. Sealing This Case Violated the First Amendment.

#### 1. The First Amendment applies to all of the documents filed with the district court in this case.

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court recognized the First Amendment right of access to judicial proceedings and held that a criminal trial must be open to the public. *Id.* at 580 (plurality opinion). Since *Richmond Newspapers*, many courts of appeals, including this Court, have applied First Amendment protections to civil proceedings as well. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Newman v. Graddick*, 696 F.2d 796, 800-02 (11th Cir. 1983); *cf. Brown &*

*Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983) (suggesting that rights of access to civil and criminal proceedings are coextensive).

The major reason for requiring open judicial proceedings is to enable public oversight of the courts — both their processes and the outcomes they produce. *See, e.g., Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co*., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary . . . so that the public can judge the product of the courts in a given case."); *accord VDSP*, 386 F.3d at 575 (same); *see also FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("Public access to judicial records and documents allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." (citation and internal quotation marks omitted)); *see generally Richmond Newspapers*, 448 U.S. at 572 (plurality opinion) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

The judicial-transparency jurisprudence of this Court and its sister circuits compels the conclusion that each category of documents filed with the district court in this case is entitled to First Amendment protection:

*Summary Judgment Materials*. This Court has squarely held that the First Amendment applies to summary judgment motions and supporting materials, because summary judgment serves as a substitute for a trial at which the same

23

arguments would have been advanced and exhibits introduced in open court. *See Rushford*, 846 F.2d at 252-53; *accord VDSP*, 386 F.3d at 576, 578 (reaffirming and applying *Rushford*); *see also Lugosch*, 435 F.3d at 124 (following *Rushford*).

*Judicial Decisions*. The logic that requires First Amendment protection of a summary judgment motion is even more compelling as to a judicial decision, particularly when the decision is (as here) the product of such a motion. If summary judgment materials are a substitute for trial, then a written judicial decision is analogous to a verdict. The presumptive availability of judicial opinions under the First Amendment also follows from the role of the judicial opinion as an act of government that declares the law and decides a concrete case. *See Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."); *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) (Easterbrook, J., as motions judge) ("Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them."); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."); *see also United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006) (denying motion in criminal case to file opinion under seal "because the decisions of the court are a matter of public record").

This case exemplifies the importance of public access and illustrates this Court's observation that "[i]t is hardly possible to come to a reasonable conclusion" about a judicial opinion "without knowing the facts of the case." *Columbus-Am. Discovery Group*, 203 F.3d at 303; *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("How else are observers to know what the suit is about or assess the judges' disposition of it?"). The district court's opinion turns on the relationship of Company Doe's product to the harm it is alleged to have caused. With the motion papers sealed and crucial portions of the decision blacked out, it is impossible to understand, let alone assess, the district court's application of law to fact. The public accordingly is disabled from evaluating the basis of the court's holding or its future effect on the viability of government product-safety databases — not only the CPSC database but also those maintained by NHTSA and the FDA. These sentences, discussing the report of harm about Company Doe's product, typify the court's analysis: "[T]he report states that [REDACTED]. But the report does not indicate how [REDACTED] is connected to [REDACTED]." Op. 39. What the public is thus left with is a decision "so cryptic and unrevealing in its rationale as to be rightly suspect — whatever its result." *Stone*, 855 F.2d at 182. Such a drastic limitation on public access to the workings of government should be permitted, if at all, only upon demonstration of a compelling interest.

25

*Complaints; Nondispositive Motions*. Like documents associated with dispositive motions, complaints, answers, and motions for preliminary injunctive relief form the basis for a court's adjudication of a case, define the scope of the dispute, and help determine its course. *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991) (when a court's decision "shape[s] the scope and substance of the litigation . . . the need for public scrutiny of the basis of the district court's decision is almost as important as when the court has made a dispositive ruling"). Complaints and answers are often critical to deciding dispositive motions; for instance, a motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A preliminary injunction motion is like a dispositive motion in that it is a vehicle for granting a form of relief, albeit temporary.

This Court should therefore follow the lead of others that have held that complaints, nondispositive motions, and associated supporting materials are subject to the First Amendment right of access. *See In re Providence Journal Co.*, 293 F.3d 1, 6, 11-13 & n.5 (1st Cir. 2002) (invalidating under the First Amendment a district court's practice of refusing to store in the public case file legal memoranda in support of motions); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984) (holding that First Amendment protects public right of access to hearing on preliminary injunction and transcript of that hearing); *Minter v. Wells*

26

*Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009) (refusing to seal motion for protective order, and concluding that Supreme Court and Fourth Circuit precedent "strongly favors" application of First Amendment standards to non-dispositive civil motions); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *5 (S.D. Tex. July 20, 2009) (recognizing First Amendment interest in accessing "case-initiating documents"); *In re Omnicom Group, Inc. Sec. Litig.*, 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) ("[A] First Amendment right of access extends to pretrial motions and the papers submitted in support of them."); *Vassiliades v. Israely*, 714 F. Supp. 604, 605-06 (D. Conn. 1989) (applying First Amendment in rejecting motion to seal civil complaint); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 1988 WL 71197, at *1 (N.D. Ill. June 24, 1988) (acknowledging First Amendment right of access in granting motion to unseal civil complaint).

*Docket Sheets*. Docket sheets likewise are subject to the First Amendment right of access. As this Court noted in vacating the sealing of a docket sheet under the First Amendment, "we can not understand how the docket entry sheet could be prejudicial." *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 95-96 (2d Cir. 2004) (holding that the First Amendment right of access applies to docket sheets); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (same). The availability of docket sheets enhances both fairness and the appearance of fairness by providing "a map

27

of the proceedings." *Hartford Courant*, 380 F.3d at 95. Here, such a map would enable the public to understand how and why a court rejected publication of the report about Company Doe's product — including what procedures the court employed and what filings it considered. *See United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029 n.15 (11th Cir. 2005) ("The docket sheet . . . allows one to quickly determine the status of a case, the actions of the parties, and the determinations of the judge, without requiring the inspection of every item in the case file."). This very appeal demonstrates the importance of public docket sheets: although this brief explains why various categories of documents filed in the district court are subject to the First Amendment right of access, Consumer Groups may not have addressed all the documents in the case, because they do not have an inventory of what was filed.

 *Materials Regarding Sealing*. "Public argument is the norm even, perhaps especially, when the case is about the right to suppress publication of information." *Matter of Krynicki*, 983 F.2d 74, 76 (7th Cir. 1992) (Easterbrook, J., as motions judge). The question whether to litigate a case under seal implicates fundamental principles of democratic government, including public oversight of the judiciary, government transparency, and the free exchange of ideas. It would be ironic were the debate over transparency to be itself conducted in secret. Nor has that been our history. "Even disputes about claims of national security are litigated in the open.

Briefs in the Pentagon Papers case and the hydrogen bomb plans case were available to the press, although sealed appendices discussed in detail the documents for which protection was sought." *Union Oil*, 220 F.3d at 567 (citations omitted).

*Residual Matters*. As noted, because the docket itself is sealed, Consumer Groups cannot know all of the types of documents filed in this case. In general, though, because most types of court filings contribute in some way to the court's decisionmaking process, any documents filed with the court should be presumed to be subject to the public's First Amendment right of access. "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Id.*

### 2. *Company Doe has not met its burden under the First Amendment to justify sealing any part of the district court record.*

Because the First Amendment protects public access to the documents filed in the district court, only a compelling interest in secrecy could justify the sealing of these materials. No such interest exists here.

The district court granted the motion to seal to protect Company Doe's reputational interest in avoiding dissemination of a "materially inaccurate" report about its product. Op. 68. But whether or not the criticism of the company's product is valid, this Court and its sister circuits have consistently rejected the

29

suggestion that the potential for a company to be subject to adverse publicity or embarrassment justifies blocking public access to court filings — under *any* standard, either the First Amendment compelling-interest test or the less demanding common law standard. "Simply showing that the sealed information would harm a company's reputation is not sufficient" to override the public interest in access. *Under Seal v. Under Seal*, 27 F.3d 564, 1994 WL 283977, at *3 (4th Cir. June 27, 1994) (citation, internal quotation marks, and source's alteration marks omitted);[8] *accord Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1st Cir. 1998); *Republic of the Philippines*, 949 F.2d at 663; *Cent. Nat'l Bank of Mattoon v. U.S. Dep't of Treasury*, 912 F.2d 897, 900 (7th Cir. 1990); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 685 (3d Cir. 1988); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985); *Publicker Industries*, 733 F.2d at 1074; *Joy*, 692 F.2d at 894.

> Many a litigant would prefer that the subject of the case — how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on — be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.

*Union Oil*, 220 F.3d at 567.

---

[8] Consumer Groups cite this unpublished disposition, which is available in a publicly accessible electronic database, because of its value to a material issue in this case and the absence of a published circuit opinion that would serve as well. *See* Fed. R. App. P. 32.1; 4th Cir. R. 32.1.

In sum, when a party invokes the judicial process, its desire to shield information from the public "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system. Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know." *Brown & Williamson*, 710 F.2d at 1180; *accord Cent. Nat'l Bank of Mattoon*, 912 F.2d at 900 ("[T]he bank's interest in keeping the bad news about its management secret is meager in relation to the claims of a free press for access to governmental proceedings.").

Nor can Company Doe prevail based on the theory that sealing is necessary to avoid forfeiting the relief it is seeking, Op. 68, as this notion conflates the Company's specific legal claim with the Company's desire to litigate that claim in secret. The relief sought by Company Doe in its complaint (as far as Consumer Groups can infer from the district court's opinion, since the complaint itself is sealed and Consumer Groups have not seen it) is an injunction barring the CPSC from including a particular product safety complaint in the CPSC database. That relief is different from and far narrower than an order prohibiting all discussion of the complaint in litigation or other presumptively public forums. The district court itself understood Company Doe's lawsuit as asserting its "right . . . to prevent a materially inaccurate report from *appearing on the database*." Op. 60 (emphasis added). And the district court located that right in provisions of the CPSIA and its

implementing regulations that discuss the CPSC's duties regarding what information belongs or does not belong *in the database*. *See, e.g.*, Op. 58 (citing 15 U.S.C. § 2055a(c)(4)(A) and 16 C.F.R. § 1102.26(g)). Yet the district court's sealing analysis equates the right to avoid publication of a report in the database with the right to avoid public discussion of both the report and the Company's lawsuit about it.

A sweeping injunction prohibiting discussion or disclosure of a complaint about Company Doe's product is, of course, far beyond the power of this Court or any government agency. *See, e.g., Org. for a Better Austin v. Keefe*, 402 U.S. 415, 415-20 (1971) (striking down injunction against leaflets criticizing a business). Such an order would amount to a content-based and viewpoint-based prior restraint of protected speech. *See generally Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) (viewpoint-based restrictions unconstitutional); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (content-based regulations presumptively invalid); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (prior restraints presumptively invalid). Even the Company's victory on the merits in this case would not prevent the public from discussing the consumer complaint or its validity — if the seal had not prevented the public from learning about the complaint in the first place. Thus, the broad secrecy imposed by the seal reaches

32

far beyond the relief sought and is in no way necessary to secure that specific relief.

The district court's leap from enjoining publication of the report in the database to imposing a broad cloak of secrecy on the entire litigation seems to be rooted in a troubling assumption about the undesirability of public debate. The court envisioned that if the facts of the case were public, Company Doe would be powerless to protect itself against the report's charge that its product caused harm: "although Plaintiff could publicly comment on the report's inaccuracy, ordinary consumers would likely dismiss this measure as disingenuous damage control." Op. 49. The First Amendment rejects precisely this attitude of distrust toward the marketplace of ideas. As Justice Brandeis explained, the possibility of "falsehood and fallacies" in our discourse does not justify prior restraint; rather, our Constitution teaches that "the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964) ("[E]rroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the breathing space that they need to survive[.]" (citations and internal quotation marks omitted)). Thus, far from qualifying as a compelling interest, Company Doe's desire to keep litigation

concerning a complaint about its product from being a subject of public discourse is no legitimate interest at all.

The district court further opined that allowing public access would violate *Company Doe's* First Amendment right to access the court system: requiring public litigation, in the court's view, would put the Company to a "Hobson's choice" between seeking judicial redress and avoiding adverse publicity. Op. 70. This novel view of the First Amendment interests at stake in sealing decisions is at odds with this Court's and others' repeated affirmation of the public's First Amendment right of access. The courts are presumed open, not closed, and public debate about the workings of the judiciary aids, rather than detracts from, the health of the judicial process. "When [litigants] call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil*, 220 F.3d at 568.

Here, sealing undermines not only public knowledge about the work of the courts but also the public knowledge fostered by the CPSC database itself. If any company may litigate under seal its challenge to its product's inclusion in the database, every product manufacturer will have an incentive to try its hand when a report of harm names that manufacturer's product; whether the company is right or wrong, by the time the litigation is resolved, it will have prevented publication in the database for a year or more and meanwhile blocked all public knowledge of the

34

concern about the product. If the company is wrong and the report about its product should be included in the database, the public will have remained in the dark about a dangerous product — precisely the result Congress was trying to avoid when it enacted the CPSIA. *See* H.R. Rep. No. 110-501, at 34 (2007). Conversely, if the company prevails, the court proceedings will vindicate its position, not create negative publicity for the company. While the litigation is ongoing, of course, the public will be exposed to the competing claims of the opposing sides (as in all judicial disputes). The First Amendment empowers the public to sort through those competing claims; it does not permit the judiciary to restrict what claims the public may hear in the first place.

Finally, even if Company Doe's interest in avoiding the specter of bad publicity were compelling under the First Amendment, the district court's sealing order is not "narrowly tailored," *Rushford*, 846 F.2d at 253, because the Company's reputation would not be harmed by the release of the district court's opinion vindicating and praising Company Doe and its product. According to the district court, posting the report of harm in the database would have been arbitrary and capricious because the report of harm "fails to relate to Plaintiff's product in any sensible way." Op. 53. The court went even further, praising Company Doe's "solid track record of safety." Op. 69. Revealing the facts supporting these conclusions would if anything enhance Company Doe's reputation. Thus, even

assuming Company Doe's reputational stake justified a seal at the outset (a point Consumer Groups vigorously dispute), it provides no basis for sealing at this point, because it appears that the release of the opinion would bolster, not undermine, Company Doe's reputation. *See In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989) ("Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible.").

In sum, Company Doe has not advanced a compelling interest to defeat the public's First Amendment right to open judicial proceedings. The district court's justifications for sealing are predicated on assumptions incompatible with the First Amendment's guarantee of an open society in which information flows freely and the antidote for potentially "false" speech is resolution of controversy through the marketplace of ideas rather than the heavy-handed mechanism of government suppression. The seal violates the First Amendment and should be lifted.

### B. Sealing This Case Violated the Common Law Right of Access.

Augmenting the First Amendment right of access to court proceedings, the common law right of access encompasses the "right of the public to inspect and copy *all* judicial records and documents." *VDSP*, 386 F.3d at 575 (citations and internal quotation marks omitted, and emphasis added); *accord Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The district court's sealing decision, in addition to violating the First Amendment, runs afoul of the common

law right because the Company failed to identify a "significant" countervailing interest that "heavily outweigh[s]" the public interest in access. *VDSP*, 386 F.3d at 575.

Again, the district court justified its sealing decision based on the Company's reputational interest and its alleged interest in not losing through publicity the claims it asserts in the underlying lawsuit. The latter argument, as explained above, is a red herring: publicity of this lawsuit does not deprive the Company of the right it seeks to vindicate, which is merely the right not to have the complaint about its product published *in the CPSC database*. *See supra* Part II.A.2. And Company Doe's reputational concern is far outweighed by the public interest in disclosure.

The public has two strong and independent interests in judicial openness, and each one standing alone is enough to outweigh the reputational interest. First, as discussed, the public has a strong interest in government transparency, including observing and overseeing the work of the courts. *See supra* Part II.A.1. Second, the public has an interest in the subject matter of this lawsuit. The handling of product safety complaints and the public availability of product safety information are matters of great importance to consumers and to the Consumer Groups objecting to sealing here. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 776-77, 787 (1st Cir. 1988) (noting strong public interest in documents from consulting firm

that did research for tobacco company, because the documents concerned "an important public health issue"); *accord Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994); *Hammock v. Hoffmann-LaRoche, Inc.*, 662 A.2d 546, 558 (N.J. 1995).

The CPSC database is an important public safety tool that dramatically increases public access to potentially life-saving information about dangerous products. Prior to passage of the CPSIA, members of Congress and the public were concerned about the delay between when the CPSC learned about product defects and when the public was informed about these problems.[9] In one egregious example, the CPSC knew for months about a dangerous waterproofing sealant that sickened dozens of individuals — two fatally — before a recall was issued and the

---

[9] *See, e.g.*, Letter from Rep. Edward J. Markey to Nancy A. Nord, CPSC Chair (Feb. 25, 2008) (expressing "concern[] that there often exist unacceptably long delays between the time at which the Commission first becomes aware of [flawed, defective or unsafe] products and the time at which the unsuspecting public learns about them"), *available at* http://markey.house.gov/sites/markey.house.gov/ files/documents/Zenith%20database%20CPSC.pdf; *see also* Public Citizen, *Hazardous Waits: CPSC Lets Crucial Time Pass Before Warning Public About Dangerous Products*, at 1 (Jan. 2008) (finding that in 46 instances of product reports between 2002 and 2008 that resulted in product recalls, the CPSC delayed an average of more than 200 days after learning of a hazard before sharing the information with the public), *available at* http://www.citizen.org/documents/HazardousWaits.pdf.

public was alerted to the hazard.[10] The issue of delay in making the public aware of potential product hazards received substantial coverage in the press.[11]

Against this backdrop, Congress enacted the CPSIA to enhance consumers' access to product safety information. Instead of waiting months to warn consumers about potential dangers, the CPSC must inform the public within twenty business days of receiving a report of harm; the twenty-day period includes the time for the manufacturer to preview the report and submit a response for inclusion in the database if it desires. *See* 15 U.S.C. § 2055a(c)(4). Following the model of the successful consumer product databases that have existed since 1996 for complaints about the safety of medical devices and of cars,[12] the CPSC database empowers members of the public to learn more about products before purchasing them and closes the time gap between when a safety hazard is discovered and when the public learns of it.

Thus, the proceedings in this case are of significant public concern because the public has a strong interest in the fate of these important consumer-safety tools,

---

[10] *See* Eric Lipton, *Dangerous Sealer Stayed on Shelves After Recall*, N.Y. Times, Oct. 8, 2007.

[11] *See, e.g.*, *Put Complaints Online*, U.S.A. Today, Mar. 5, 2008, at 10A; *Consumer Watchdogs*, N.Y. Times, Mar. 3, 2008; Vicki Lee Parker, *Agency That Protects Consumers Is in Need of Help*, Orlando Sentinel, Mar. 2, 2008.

[12] *See* www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/search.CFM (FDA database); www.safercar.gov (NHTSA database).

which will be significantly affected by the manner in which courts interpret the statutes and implementing regulations and apply them to particular factual contexts. The district court erred in rejecting out of hand the public interest in its decision. *See* Op. 69 (opining that the arguments in favor of unsealing "share an overarching flaw: they presume that the public has an interest in the subject matter of this suit").

The general interest in observing the workings of government and the specific interest in this case are enough to outweigh Company Doe's reputational interest, as this Court and others have repeatedly held when applying the common law presumption of access. *See supra* Part II.A.2. Moreover, even if the reputational interest weighed more heavily as an abstract matter, concretely this interest is not in jeopardy here, because Company Doe's reputation would suffer no diminution were the case unsealed: as noted, the district court's opinion on the merits vindicates the Company and its product completely, even praising the Company's safety record. *See supra* Part II.A.2. Thus the Company was "wholly unable to point the court below to a single particularized harm which might befall [it], or to any sufficiently unique reason to warrant special treatment" in the face of the common law presumption of openness. *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (requiring "particularized showing

of the need for continued secrecy" (citation and internal quotation marks omitted)). Because no "significant" interest "heavily outweigh[s]" the public interest in access, *VDSP*, 386 F.3d at 575, the common law right was violated, and the district court abused its discretion in sealing the case.

## C. This Court Should Require Expeditious Resolution of Motions To Seal.

As this Court has explained, "the value of openness . . . is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure." *Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991) (quoting *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989)) (internal quotation marks omitted); *see also Republic of the Philippines*, 949 F.2d at 664 ("[T]he public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court."); *Matter of Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984) ("[T]he presumption of access normally involves a right of *contemporaneous* access[.]" (emphasis in original)).

The motion to seal this case was pending for nine months while the litigation proceeded from complaint to judgment. Almost three more months passed before the public was informed that the court had granted the motion to seal, along with judgment for the plaintiff. During this time, public oversight of the judicial process — one of the core goals of judicial transparency — was not possible. Additionally,

since neither Consumer Groups nor the public knew the case was being actively litigated until after judgment was granted, there was no opportunity to seek review (for instance, by mandamus) of the district court's decision to proceed in secret until the case was over.

To be sure, the district court in this case adhered to each of this Court's three procedural requirements for considering a motion to seal: "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *VDSP*, 386 F.3d at 576. Nonetheless, because of the timing of the sealing decision, public oversight was impossible during the pendency of the litigation. As this Court has recognized, access to judicial proceedings should be contemporaneous, not merely historical, to ensure meaningful oversight. *Matter of Application and Affidavit for a Search Warrant*, 923 F.2d at 331. Therefore, this Court should adopt a fourth procedural safeguard for the disposition of sealing motions: a ruling on a motion to seal should be promptly made. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("We take this opportunity to emphasize that the district court must make its findings quickly. . . . The public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents.").

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN PERMITTING THE PLAINTIFF'S USE OF A PSEUDONYM.

Federal and local rules of procedure generally require disclosure of the identities of parties to litigation. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]") & 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."); D. Md. Loc. R. 102(2)(a) (requiring complaint to contain names and addresses of all parties). These rules "protect[] the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992). A court's decision whether a party may litigate under a pseudonym is reviewed for abuse of discretion, but proceeding by pseudonym is a "rare dispensation." *James v. Jacobson*, 6 F.3d 233, 238, 239 (4th Cir. 1993); *accord* Wright & Miller et al., 5A Fed. Prac. & Pro. Civ. § 1321 (3d ed. 2004 & Supp. 2012); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008) (requirement that parties be identified "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly"); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (noting "clear and strong First Amendment interest" in open proceedings). The specific question here is whether the possibility of an injury to business reputation suffices to displace the "general presumption of openness of judicial proceedings" so as to permit the use of a pseudonym. *James*, 6 F.3d at 238. For the following reasons, it does not.

This Court has provided a non-exhaustive list of considerations relevant to the pseudonymity inquiry:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, [5] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 238 (hereinafter "*James* factors"). A party's interest in secrecy should be weighed both against prejudice to the opposing party *and* against the public's interest. *See Sealed Plaintiff*, 537 F.3d at 186-87; *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

In general, pseudonymity in litigation is granted to protect personal privacy, not corporate interests. *See, e.g.*, *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("Examples of areas where courts have allowed pseudonyms include cases involving abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." (internal quotation marks omitted)); *Doe v. Frank*, 951 F.2d at 324 (cataloguing similar cases). Reflecting this point, the second and third *James* factors — the "risk of retaliatory physical or mental harm" and "the ages of the persons," *James*, 6 F.3d at 238 — make no

44

sense as applied to a corporation. The district court acknowledged this problem but drew a different — and incorrect — lesson from it: the poor fit between the factors and Company Doe's claim to pseudonymity led the court to the conclusion that applying these factors here "would be to manufacture a miscarriage of justice," Op. 72, rather than the conclusion that, in general, corporations ought not to be permitted to proceed pseudonymously.

In any event, the remaining *James* factors weigh strongly against permitting Company Doe to hide its identity. The first factor is "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238. Setting aside whether a business can have any claim to "privacy in a matter of sensitive and highly personal nature" in the first place, *cf. FCC v. AT&T Inc.*, 131 S. Ct. 1177, 1183 (2011) (holding that FOIA exemption concerning "personal privacy" did not refer to corporate privacy, because that phrase "suggests a type of privacy evocative of human concerns — not the sort usually associated with an entity like, say, AT&T"), it is clear that Company Doe seeks pseudonymity not to protect privacy but "merely to avoid the annoyance and criticism that may attend any litigation." *James*, 6 F.3d at 238.

Courts around the country have consistently rejected the proposition that a threat to business or professional reputation justifies hiding the identity of a

plaintiff. For instance, when a doctor sued to enjoin state medical board disciplinary proceedings against him, the Tenth Circuit held that the risk to the doctor's professional reputation did not justify the use of a pseudonym. *Coe v. U.S. Dist. Ct.*, 676 F.2d 411, 414-18 (10th Cir. 1982). The Fifth Circuit refused to allow a group of law students to litigate Title VII claims under pseudonyms despite their contention that revealing their identities would jeopardize their future employment prospects. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Numerous district courts, including one in this circuit, have likewise rejected pleas for pseudonymity based on potential threats to professional reputation. *See, e.g.*, *United States v. King Pharms., Inc.*, 806 F. Supp. 2d 833, 837, 842 (D. Md. 2011) (lifting seal despite qui tam relator's fears of retaliation by her employer, which was the defendant); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) (refusing to allow soldiers to proceed pseudonymously in challenge to military's "stop-loss" policy; threat of economic harm was not sufficient justification for secrecy); *Free Market Compensation v. Commodity Exchange, Inc.*, 98 F.R.D. 311, 313 (S.D.N.Y. 1983) (refusing to permit joinder of pseudonymous plaintiff in securities fraud case because " 'John Doe's' desire to avoid professional embarrassment and economic loss is insufficient"); *see generally Doe v. Megless*, 654 F.3d at 408 ("That a plaintiff may suffer embarrassment or economic harm is not enough."); *Nat'l Commodity & Barter*

46

*Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (noting that pseudonymity "has not been permitted when only the plaintiff's economic or professional concerns are involved"); *Ashbourne v. Geithner*, 2012 WL 2874012, at *1 n.1 (D. Md. July 12, 2012) ("Fear of embarrassment or economic loss does not outweigh society's interest for open court proceedings.").

As far as Consumer Groups are aware, no company has ever been granted pseudonymity to protect its reputation. In fact, Consumer Groups could locate no case in which a court upheld, for any reason, a corporation's contested claim that it should be allowed to proceed pseudonymously.[13] Company Doe's desire to avoid negative publicity falls squarely into the category of "avoid[ing] the annoyance and criticism that may attend any litigation" rather than "preserv[ing] privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238.

The fact that Company Doe is suing the government — the fourth *James* factor — also counsels in favor of openness. *See Doe v. Megless*, 654 F.3d at 411

---

[13] There are a handful of cases in which corporations proceeded pseudonymously, but the decisions in those cases do not indicate that the issue was contested or that the court rendered a considered decision on the issue of pseudonymity. *See, e.g.*, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 148 n.1 (1989) (requester in Freedom of Information Act case was a defense contractor; no indication that any party objected to pseudonym, and the issue was not analyzed); *Matter of Baby K*, 16 F.3d 590, 592 n.1 (4th Cir. 1994) (pseudonyms for parties, which included a hospital, were adopted by agreement; court did not analyze propriety of pseudonyms).

(finding that the public interest in disclosure increases if the defendants are public officials and government bodies); *cf. Doe v. Frank*, 951 F.2d at 324 (explaining that where a plaintiff sues a private party, that fact weighs *against* permitting the plaintiff to proceed pseudonymously, but the fact that a plaintiff is suing the government does *not* weigh *in favor of* pseudonymity). Although there is no risk of unfairness to the opposing party here (the fifth *James* factor) because the government has always known Company Doe's identity, it is noteworthy that the CPSC opposed the motion to seal and proceed under a pseudonym.

Finally, the public interest — which several courts of appeals explicitly consider, *see Sealed Plaintiff*, 537 F.3d at 186-87; *Femedeer*, 227 F.3d at 1246; *Does I thru XXIII*, 214 F.3d at 1068 — weighs heavily in favor of disclosure. "The people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997). More specifically, the public has an important interest in complete information about legal proceedings, like this one, "attacking . . . popularly enacted legislation." *Femedeer*, 227 F.3d at 1246. These considerations all militate against allowing the plaintiff here to proceed pseudonymously and outweigh any interest of the Company in using a pseudonym to protect against bad press.

"Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.* No court has found that the

potential for harm to business reputation justifies pseudonymity. Application of the *James* factors and consideration of the public interest support openness. The district court therefore abused its discretion in accepting Company Doe's novel claim that a risk to its reputation justified exempting the Company from "the annoyance and criticism that may attend any litigation," *James*, 6 F.3d at 238, in our presumptively public judicial system.

## CONCLUSION

The district court's decision to grant the motion to seal and to proceed under a pseudonym should be reversed.

Dated:  December 13, 2012                    Respectfully submitted,

                                             /s/ Scott Michelman

                                             Scott Michelman
                                             Allison M. Zieve
                                             Julie A. Murray
                                             PUBLIC CITIZEN LITIGATION GROUP
                                             1600 20th Street NW
                                             Washington, DC  20009
                                             (202) 588-1000

*Counsel for Appellants Public Citizen, Consumer Federation of America, and Consumers Union*

## <u>CERTIFICATION OF COMPLIANCE</u>

This brief complies with the type-volume limitation of 32(a)(7)(B) because this brief contains 11,883 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14-point type.

<u>/s/ Scott Michelman</u>

## <u>CERTIFICATION OF SERVICE</u>

I certify that on December 13, 2012, I served this brief by ECF on all registered counsel for appellees.

<u>/s/ Scott Michelman</u>